[No. S056310. Nov. 13, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
ADAM CASTILLO, Defendant and Appellant.

[No. B099613. Nov. 13, 1997.]

In re ADAM CASTILLO on Habeas Corpus.

**COUNSEL**

Dan Mrotek, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Sanjay T. Kumar, Steven D. Matthews, John R. Gorey, Robert F. Katz and Mitchell Keiter, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

CHIN, J.—A jury may consider evidence of voluntary intoxication in determining whether a defendant had the requisite mental state for first degree murder. The issue in this case is whether defense counsel was ineffective for failing to request a "pinpoint" jury instruction specifically relating voluntary intoxication to premeditation and deliberation. The Court of Appeal found counsel was ineffective. We disagree because the trial court gave a fully adequate pinpoint instruction. Accordingly, we reverse the judgment of the Court of Appeal.

## I. FACTS

The prosecution evidence showed that on the evening of October 2, 1992, Jose Escobar was driving a car in Los Angeles with defendant as a passenger. Both were members of the Juares Maravilla gang. After driving for a short while, Escobar and defendant picked up another Juares Maravilla member and two others. The group drove to defendant's house. Defendant went inside and returned a few minutes later carrying an object, later identified as a sawed-off shotgun, wrapped in a towel. Escobar resumed driving and, at defendant's request, stopped at an intersection in Juares Maravilla gang territory. Rickey Garcia, Sergio Cortez, and Denise De La Rosa were standing nearby.

Defendant asked Garcia "where he was from," which meant, what was his gang affiliation. Garcia responded, "Tiny Boys," the name of a rival gang. Defendant got out of the car with a small gun and shot Cortez in the chest, shouting, "Juares." Defendant returned to the car and removed the sawed-off shotgun that had been wrapped in the towel. Cortez, who survived the shooting, fled with Garcia and De La Rosa. Defendant chased Garcia and fatally shot him in the head with the shotgun. One of defendant's fellow passengers testified he did not appear to be under the influence of drugs.

Defendant testified that he was not a Juares Maravilla gang member. He said he smoked about one and one-half cigarettes containing PCP the evening of the shootings, and that they caused his heart to beat rapidly and made him feel dizzy and unable to stand. Shortly after smoking the cigarettes, defendant heard someone call his name. He entered Escobar's car.

Defendant did not know who was in the car but assumed they were his friends. He remembered riding around in the car and getting out of the vehicle after hearing someone say "Tiny Boys," but he did not remember shooting anyone. He "just remember[ed] everything was in slow motion . . . ." After his arrest, defendant told police that he recalled shooting at somebody at that intersection. At trial, defendant denied the recollection; he explained that he "was being asked too many questions at one time."

On rebuttal, a police officer testified that at first defendant claimed he had been elsewhere at the time of these events. When informed that witnesses had identified him as the gunman, he said that he "wished to change his story" and told police about smoking the PCP cigarettes.

As relevant to this appeal, defendant was charged with the murder of Garcia and the attempted premeditated murder of Cortez. The court instructed the jury on first and second degree murder and involuntary manslaughter for killing Garcia. The sole theory of first degree murder was premeditation and deliberation. The court also instructed on attempted murder and assault with a firearm for shooting Cortez. The jury convicted defendant of the first degree murder of Garcia and the assault with a firearm of Cortez.

Defendant appealed and filed a petition for writ of habeas corpus. The Court of Appeal issued an order to show cause and ordered the petition considered concurrently with the appeal. In the appeal, the court reversed defendant's conviction for first degree murder and otherwise affirmed the judgment. It found defense counsel had provided ineffective assistance for not requesting a jury instruction specifically relating voluntary intoxication to the premeditation and deliberation necessary to establish first degree murder. In light of its ruling on the direct appeal, the court denied as moot the petition for writ of habeas corpus. We granted the Attorney General's petition for review.

## II. Discussion

Defendant testified that he had smoked PCP before the shootings, and that it made him dizzy and affected his mental state. At one time evidence of voluntary intoxication was admissible to support the defense of diminished capacity, but the Legislature has abolished that defense. By statute at the time of the crime and of trial, evidence of intoxication was "admissible solely on the issue of whether or not the defendant *actually* formed a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged." (Pen. Code, § 22, subd.

(b), italics added; see *People* v. *Saille* (1991) 54 Cal.3d 1103, 1111-1112 [2 Cal.Rptr.2d 364, 820 P.2d 588].)[1]

In *Saille*, we explained that, with the abolition of diminished capacity as a defense, "Intoxication is now relevant only to the extent that it bears on the question of whether the defendant actually had the requisite specific mental state." (*People* v. *Saille, supra,* 54 Cal.3d at p. 1119.) An instruction relating intoxication to any mental state is therefore "now more like the 'pinpoint' instructions" that "are not required to be given sua sponte." (*Ibid.*) Under *Saille*, therefore, the court did not have a sua sponte duty to give *any* instruction on the relevance of intoxication, any more than it had to instruct on the relevance of other evidence. In the absence of instructions, defense counsel could simply argue that defendant did not actually have the necessary mental state due to his intoxication, just as counsel could argue any other inferences from the evidence.

In this case, the court did give a pinpoint instruction of the type discussed in *People* v. *Saille, supra,* 54 Cal.3d 1103. It told the jury it should consider defendant's voluntary intoxication in determining whether he had the specific intent or mental state required for the charged crime.[2] ▮ Defendant contends, however, and the Court of Appeal agreed, that defense counsel was ineffective for not requesting that the instruction specifically tell the jury it should consider the intoxication evidence in deciding whether he *premeditated* the killing. In effect, defendant argues that the pinpoint instruction did not pinpoint enough, that it did not additionally say that premeditation is a mental state.

▮ The law regarding claims of ineffective assistance of counsel is settled. Defendant must show that counsel's performance was both deficient

---

[1]Effective January 1, 1996, the Legislature amended Penal Code section 22, subdivision (b), to provide: "Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, or, when charged with murder, whether the defendant premeditated, deliberated, or harbored express malice aforethought." (Stats. 1995, ch. 793, § 1.)

[2]The court gave CALJIC No. 4.21 as follows:

"In the crimes of murder and attempted murder . . . , a necessary element is the existence in the mind of the perpetrator of the specific intent to kill.

"If the evidence shows that the defendant was intoxicated at the time of the alleged crime, you should consider that fact in determining whether the defendant had such specific intent or mental state.

"If from all the evidence you have a reasonable doubt whether the defendant formed such specific intent or mental state, you must find that he did not have such specific intent or mental state."

Immediately after giving CALJIC No. 4.21, the court gave CALJIC No. 4.21.1 as follows: "Under the law it is a general rule that no act committed by a person while in the state of voluntary intoxication is less criminal by reason of being in such condition. However, there is

and prejudicial, i.e., that it is reasonably probable that counsel's unprofessional errors affected the outcome. (*Strickland* v. *Washington* (1984) 466 U.S. 668, 687, 693-694 [104 S.Ct. 2052, 2067-2068, 80 L.Ed.2d 674]; *People* v. *Ledesma* (1987) 43 Cal.3d 171, 216-217 [233 Cal.Rptr. 404, 729 P.2d 839].) We have also said that if the record sheds no light on why counsel acted or failed to act in the challenged manner, we must reject the claim on appeal unless counsel was asked for an explanation and failed to provide one, or there could be no satisfactory explanation for counsel's performance. (*People* v. *Mendoza Tello* (1997) 15 Cal.4th 264, 266 [62 Cal.Rptr.2d 437, 933 P.2d 1134].) Here, we need not inquire into why counsel failed to request an additional explanatory instruction because, unlike the Court of Appeal, we conclude none was needed. The court fully apprised the jury of the law applicable to defendant's intoxication defense.

The court gave CALJIC Nos. 4.21 and 4.21.1 as adapted to this case. (See fn. 2, *ante.*) The Court of Appeal found the instructions inadequate and misleading. It believed they caused the jury to conclude it should consider the evidence of intoxication on the question of intent to kill but could not consider it on the question of premeditation. Were that correct, the issue would not solely be one of ineffective assistance of counsel. If the trial court's instructions were indeed misleading, the issue here would implicate the court's duty to give legally correct instructions. Even if the court has no sua sponte duty to instruct on a particular legal point, when it does choose to instruct, it must do so correctly. "Although we might hesitate before holding that the absence of any instruction on voluntary intoxication in a situation such as that presented in this case is prejudicial error, when a partial instruction has been given we cannot but hold that the failure to give complete instructions was prejudicial error." (*People* v. *Baker* (1954) 42 Cal.2d 550, 575-576 [268 P.2d 705], and quoted in *People* v. *Saille, supra,* 54 Cal.3d at p. 1119.)

■ But we find the trial court correctly and fully instructed the jury on the way in which the evidence of intoxication related to defendant's mental

---

an exception to this general rule, namely, where a specific intent or mental state is an essential element of the crime. In such event, you should consider the defendant's voluntary intoxication in your determination of whether the defendant possessed the required specific intent or mental state at the time of the commission of the alleged crime.

"Thus in the crimes of murder and attempted murder . . . a necessary element is the existence in the mind of the defendant of a certain specific intent or mental state which is included in the definition of the crimes set forth elsewhere in these instructions.

"If the evidence shows that a defendant was intoxicated at the time of the alleged crime, you should consider that fact in determining whether or not such defendant had such specific intent or mental state.

"If from all the evidence you have a reasonable doubt whether the defendant had such specific intent or mental state, you must find the defendant did not have such specific intent or mental state."

state, including premeditation. The Court of Appeal criticized the actual instructions as follows. "No 'pinpointing' was done in this case on the issue of premeditation. At the prosecution's request, CALJIC No. 4.21 (1992 rev.) was given to the jury. But although the blank for specific intent that appears in the first sentence of the instruction was filled in, mental state was not mentioned. Thus, the first paragraph of CALJIC No. 4.21 which was delivered to [the] jury provided: 'In the crimes of murder and attempted murder . . . , a necessary element is the existence in the mind of the perpetrator of the specific intent to kill.' Based on [defendant's] statement to the police and his trial testimony that he was intoxicated on PCP at the time of the crimes, the trial court would have been required to fill in the 'mental state[s]' blanks of CALJIC No. 4.21 with references to 'premeditation' and 'deliberation,' had trial counsel so requested. [Citations.] However, no such request was made." (Fns. omitted.) The Court of Appeal found the instructions misleading because, "when the first sentence of the version of CALJIC No. 4.21 that was read to the jury referred to 'the specific intent to kill' and was completely silent as to mental state, a conscientious juror would have understood it to pertain *only* to the charge of *attempted* murder, and not to the concept of premeditation as to either the attempted murder or the . . . actual murder[]." (Original italics.)

The instructions *as a whole*, however, were not misleading. ■ "[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction." (*People* v. *Burgener* (1986) 41 Cal.3d 505, 538 [224 Cal.Rptr. 112, 714 P.2d 1251].) " 'The absence of an essential element in one instruction may be supplied by another or cured in light of the instructions as a whole.' " (*Id.* at p. 539.) ■ The trial court expressly referred to both the attempted murder and murder charges. It related voluntary intoxication to "specific intent or mental state," which would be defined "elsewhere in these instructions." The instructions correctly explained that, for the jury to find defendant guilty of first degree murder, it must find he acted with "deliberation and premeditation." They further explained that defendant's deliberation and premeditation to kill "must have been formed upon preexisting reflection and not upon a sudden heat of passion or other condition precluding the idea of deliberation . . . ." A reasonable jury would have understood deliberation and premeditation to be "mental states" for which it should consider the evidence of intoxication as to either attempted murder or murder.

The Court of Appeal specifically criticized the trial court for stating, in the first paragraph of CALJIC No. 4.21, that the "specific intent to kill" is an element of murder and attempted murder, without also referring to the

mental states of premeditation and deliberation. That language was correct although, by itself, it would not have been complete. Premeditation is *not* an element of murder. Instead, as the court went on to explain, premeditation distinguishes first degree murder from second degree murder. Although the trial court might have adapted the first paragraph of CALJIC No. 4.21 to refer to both the specific intent necessary for murder and the additional mental state necessary for first degree murder, its failure to do so did not mislead the jury in light of the rest of the instructions.

The Court of Appeal found that CALJIC No. 4.21.1 "did nothing to reduce the potential for misunderstanding," and indeed exacerbated the problem, because "a juror listening carefully to its reference to an 'exception' to the rule that intoxication is not an excuse and the admonition to refer to the other instructions would have understood the exception to apply to only 'the specific intent to kill' portion of CALJIC No. 4.21." Again, we disagree. The trial court expressly referred to an exception "where a specific intent *or mental state* is an essential element of the crime." (Italics added.) No reasonable juror would understand the instructions to permit the jury to consider intoxication in determining whether defendant specifically intended to kill but to prohibit it from considering that same intoxication in determining whether he premeditated and deliberated. Premeditation and deliberation are clearly mental states; no reasonable juror would assume otherwise. Moreover, they refer to the quality of the intent to kill. By relating intoxication to mental state, the instruction necessarily directed the jury's attention to evidence of intoxication as it related to premeditation and deliberation. It is not reasonably likely the jury misconstrued the instructions as precluding it from considering the evidence of PCP use in deciding the degree of the murder. (See *People* v. *Berryman* (1993) 6 Cal.4th 1048, 1078 [25 Cal.Rptr.2d 867, 864 P.2d 40].)

The court's instructions did not hinder defense counsel from arguing that defendant's intoxication affected all the necessary mental states, including premeditation. Counsel argued that defendant's behavior was "the very type of thing that you could readily expect from someone who was under the influence," and that "From all the evidence this simply does not appear that premeditated, deliberate type of homicide at all." He stressed, "We have a case where the defendant had taken a drug, PCP, taken it for the first time." Counsel tied the intoxication evidence to the issue of premeditation and deliberation, even calling the jury's attention to the instructions: "Ladies and gentlemen, look at those instructions, and you'll have an opportunity to read them. I'm not going to go over them. You'll have plenty of opportunity. And I think you'll reach the same conclusion as I do from the evidence in this case that we do not have a deliberate, premeditated homicide in this case,

nor do we have an attempted murder with premeditation and deliberation. The evidence just indicates just the opposite."

 For these reasons, we conclude that competent counsel could reasonably conclude that the instructions adequately advised the jury to consider the evidence of intoxication on the question of premeditation, and that an additional instruction stating the obvious—that premeditation is a mental state—was unnecessary. Moreover, the court did not breach its duty to instruct correctly once it decided to instruct on voluntary intoxication. The instructions allowed the jury to consider fully the effect, if any, that defendant's claimed PCP use had on the degree of the murder, as well as on the attempted murder and murder charges themselves.

 Defendant argues the verdict shows it is likely the instructions prejudiced him. The jury found defendant guilty of the first degree murder of Garcia but guilty only of assault with a firearm for shooting Cortez. Defendant argues that the jury may have convicted him of the lesser offense with respect to the Cortez shooting because it accepted his voluntary intoxication defense to attempted murder, but that it convicted him of the first degree murder of Garcia because, due to the instructions, it did not consider voluntary intoxication in assessing premeditation. The verdicts, however, are easily reconcilable without reference to voluntary intoxication. The evidence showed that defendant shot Cortez suddenly when Garcia said they were "Tiny Boys." By contrast, Garcia was the person who had responded to defendant's question. Defendant went back to the car, retrieved another gun, and chased Garcia before shooting him in the head. Defendant's added effort of returning to the car, getting the shotgun, and seeking Garcia could have supplied the jury with the evidence of intent to kill and premeditation it found lacking in the Cortez shooting.

Moreover, the evidence of defendant's intoxication was equivocal at best. While defendant testified he was under the influence of PCP at the time of the shooting, one of his companions testified he did not appear intoxicated. He did not claim PCP use until after he first denied any involvement in the crime. The acts of retrieving the murder weapon from his house and concealing it in a towel, asking Garcia the group's gang affiliation, then shooting two persons with two different weapons when he heard the wrong answer strongly suggest a planned gang killing, not the unintended acts of someone high on PCP.

Defendant makes other arguments outside the scope of the Court of Appeal's opinion and our grant of review. Accordingly, we do not consider them. (Cal. Rules of Court, rule 29.2(a).) On remand, the Court of Appeal

should decide, as necessary, any issues our decision leaves unresolved, including the petition for writ of habeas corpus, which is no longer moot. (See *People* v. *Wells* (1996) 12 Cal.4th 979, 990 [50 Cal.Rptr.2d 699, 911 P.2d 1374].)

### III. DISPOSITION

The judgment of the Court of Appeal is reversed and the matter remanded for further proceedings consistent with this opinion.

George, C. J., Mosk, J., Baxter, J., and Werdegar, J., concurred.

**BROWN, J.,** Concurring.—I agree defense counsel's failure to request a pinpoint instruction relating voluntary intoxication to premeditation and deliberation did not render his representation constitutionally ineffective. The inquiry is two-pronged. Defendant must show inadequate representation and resulting prejudicial effect. Here, he makes a convincing case trial counsel's performance did fall "below an objective standard of reasonableness . . . . [¶] . . . under prevailing professional standards." (*Strickland* v. *Washington* (1984) 466 U.S. 668, 688 [104 S.Ct. 2052, 2064, 80 L.Ed.2d 674].) He fails, however, to "affirmatively prove prejudice." (*Id.* at p. 693 [104 S.Ct. at p. 2067].)

In *People* v. *Saille* (1991) 54 Cal.3d 1103 [2 Cal.Rptr.2d 364, 820 P.2d 588], the court held that as a result of the abolition of diminished capacity as a true defense, the trial court no longer had a sua sponte duty to instruct thereon. (*Id.* at p. 1117; see *People* v. *Sedeno* (1974) 10 Cal.3d 703, 716 [112 Cal.Rptr. 1, 518 P.2d 913], overruled on other grounds in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1].) "Thus it is now more like the 'pinpoint' instructions discussed in *People* v. *Sears* (1970) 2 Cal.3d 180, 190 [84 Cal.Rptr. 711, 465 P.2d 847], and *People* v. *Rincon-Pineda* (1975) 14 Cal.3d 864, 885 [123 Cal.Rptr. 119, 538 P.2d 247, 92 A.L.R.3d 845], to which a defendant is entitled upon request. *Such instructions relate particular facts to a legal issue in the case or 'pinpoint' the crux of a defendant's case, such as mistaken identification or alibi.* [Citation.] They are required to be given upon request when there is evidence supportive of the theory, but they are not required to be given sua sponte." (*Saille,* supra, 54 Cal.3d at p. 1119, italics added.)

In both *People* v. *Sears* (1970) 2 Cal.3d 180 [84 Cal.Rptr. 711, 465 P.2d 847] and *People* v. *Rincon-Pineda* (1975) 14 Cal.3d 864 [123 Cal.Rptr. 119, 538 P.2d 247], the court highlighted the function of pinpoint instructions: "Ordinarily, the relevance and materiality of circumstantial evidence is

apparent to the trier of fact, but this is not always true, and the courts of this state have often approved instructions pointing out the relevance of certain kinds of evidence to a specific issue [including premeditation and deliberation]. [Citation.]" (*People* v. *Sears, supra*, 2 Cal.3d 180, 190; see *People* v. *Rincon-Pineda, supra*, 14 Cal.3d 864, 885; see also, e.g., *People* v. *Granados* (1957) 49 Cal.2d 490, 495-496 [319 P.2d 346] [court should not have refused requested instruction that "pinpointed . . . theory of the defense"]; *People* v. *Kane* (1946) 27 Cal.2d 693, 698-699 [166 P.2d 285] [defendant entitled to instruction that related defense to elements of crime and doctrine of reasonable doubt].)

This function is significant for present purposes because "[i]t is principally the duty of counsel to provide the jury with routes to reach the various verdicts consistent with the evidence as viewed favorably to the respective parties," particularly when there is "the danger that a jury exposed to a welter of conflicting evidence may drift to a verdict without proper appreciation that such a verdict necessarily entails rejection of some evidence in favor of other evidence." (*People* v. *Rincon-Pineda, supra*, 14 Cal.3d at p. 885.) Although the trial court retains "residual discretion" to comment "upon assertions of fact as well as the governing propositions of law" "when confusion still reigns after closing argument," (*ibid.*) the law is well established that the defendant generally cannot complain of the failure to more fully instruct if he did not request clarification. (See, e.g., *People* v. *Byrnes* (1866) 30 Cal. 206, 208 [general instruction sufficient "particularly . . . where the accused does not request that the charge may be made more specific or minute"].)

Here, the obvious and only "defense" to first degree murder was lack of premeditation and deliberation—defendant chased the victim with a shotgun and shot him in the head but claimed he was under the influence of PCP—and counsel strenuously argued this theory. While the pattern instructions may have been legally sufficient, they did not plainly draw the connection between voluntary intoxication and proof of premeditation and deliberation. The instructions directed the jury at least twice to "consider [evidence of voluntary intoxication] in [determining] whether [or not] defendant had [the necessary] specific intent or mental state" (see CALJIC No. 4.21); at no point, however, is premeditation or deliberation described as a "mental state." The instructions simply define them as essentials of first degree murder. The only "mental state" identified as such is malice aforethought. Thus, the instructions were potentially misleading as to the legal relationship of voluntary intoxication to formation of this requisite state of mind. Although the average layperson may not be familiar with the Latin phrase *inclusio unius est exclusio alterius*, the deductive concept is commonly understood, and if applied in this context could mislead a reasonable juror as to the scope of the voluntary intoxication instruction.

In these circumstances, clarification was critical. Moreover, the instructions do nothing to " 'pinpoint' the crux" of defendant's only viable defense to first degree murder. In closing argument, counsel not only argued defendant did not premeditate or deliberate due to PCP intoxication, he specifically directed the jury to consider the instructions on this point. It is difficult to conceive a strategic explanation for not having the trial court include a clarification as well as add its imprimatur to the argument. (See *People* v. *Whitehurst* (1992) 9 Cal.App.4th 1045, 1051, fn. 2 [12 Cal.Rptr.2d 33].)

Nevertheless, it is unnecessary to resolve the question of competence since the court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." (*Strickland* v. *Washington, supra,* 466 U.S. at p. 697 [104 S.Ct. at p. 2069].) On this basis, I conclude defendant has failed to sustain his claim.

On the one hand, as explained above, the pattern instructions were potentially misleading as to defendant's defense even if not legally insufficient or inaccurate. On the other hand, for the reasons explained by the majority, the facts tend to militate against a finding of prejudice. Moreover, the trial court adequately instructed on voluntary intoxication in general, which allowed the jury to consider fully the possible effect of PCP in light of closing argument. Defense counsel could and did argue the inference from the evidence that defendant did not actually have the necessary mental state. (See, e.g., *People* v. *Padilla* (1995) 11 Cal.4th 891, 951-952 [12 Cal.4th 825h, 47 Cal.Rptr.2d 426, 906 P.2d 388]; *People* v. *Cain* (1995) 10 Cal.4th 1, 68, fn. 24 [40 Cal.Rptr.2d 481, 892 P.2d 1224].)

In reaching a contrary conclusion as to prejudice, the Court of Appeal relied in part on the fact the jury failed to convict of attempted murder and therefore may have found the evidence of voluntary intoxication persuasive to the extent the instructions linked the elements of attempted murder to this defense. "Unlike murder, in which specific intent may or may not be the basis of malice (i.e., express versus implied malice), specific intent is one of the elements of attempted murder." However, first degree murder cannot be predicated on implied malice, and the trial court explicitly instructed the jury first degree murder required "express malice aforethought." In light of defense counsel's argument, a reasonable juror would likely have understood voluntary intoxication applied to premeditation and deliberation, notwithstanding the lack of precision in the instructions. Moreover, the prosecutor never argued voluntary intoxication could not negate premeditation and deliberation, only that defendant was not intoxicated. The jury was also instructed "not [to] single out any particular sentence or any individual point

or instruction" but to "[c]onsider the instructions as a whole and each in light of all the others." (CALJIC No. 1.01.)

I thus conclude defendant has not met his burden to establish "a reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." (*Strickland* v. *Washington, supra,* 466 U.S. at p. 694 [104 S.Ct. at p. 2068].) In other words, he has failed to undermine my confidence in the outcome of the trial.

Kennard, J., concurred.