Filed 5/22/14  P. v. Corona CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C073243 |
| v. | (Super. Ct. No. P12CRF0204) |
| SERGIO CORONA, | |
| Defendant and Appellant. | |

After a domestic dispute with his girlfriend, defendant Sergio Corona entered the home of neighbors he did not know, threatened them and drove off in their car.  About 20 or 30 minutes later, police chased the fleeing car and arrested defendant.  A jury convicted defendant of first degree residential robbery, first degree residential burglary, criminal threats, unlawful driving or taking of a vehicle, and driving with willful or wanton disregard for the safety of persons or property while evading an officer.  The trial court sentenced defendant to an aggregate prison term of seven years eight months.

Although the trial court orally awarded 372 days of presentence credit (324 actual days and 48 conduct days), the abstract of judgment indicates an award of 48 actual days and 324 conduct days.

Defendant now contends (1) he received ineffective assistance of counsel because his lawyer did not request instructions on mistake of fact or voluntary intoxication, and (2) the abstract of judgment should be modified to accurately reflect the trial court's oral award of presentence credit.

We conclude defendant's ineffective assistance claim lacks merit, but we will order correction of the abstract of judgment. Accordingly, we will affirm the judgment.

BACKGROUND

At the time of the crimes, defendant lived in Pollock Pines with his girlfriend and her five children. Their baby was due any day. The girlfriend said defendant became increasingly upset that evening starting around 6:00 p.m., first yelling at one of the children and later cursing at her and throwing things. Defendant told her several times that he wanted to go back to Fresno, but they had no car. The girlfriend suggested he take a walk and return when he was calm. She did not see defendant drinking that day, but she thought he probably drank more than a bottle of wine and other liquor during the afternoon and evening.

Dorothy and Rene Van Asten lived on the same street as defendant, but they had never met him. At around 7:30 p.m., the Van Astens were watching television when defendant walked into their house and said, "I want your car keys, and I don't want to hurt you, but I have two guns in my back pocket, a .38 and a .45, and I'm ready to use them if I have to." Defendant said he had just come from "up the street" where he had punched out a window and hurt his girlfriend. His knuckles were bloody and he acknowledged throwing something at his girlfriend, but he declined Rene's offer to accompany him back to his own house to check on her. Instead, defendant insisted that he wanted their car to drive to Fresno, where his family lived.

2

Rene tried to get the situation under control by engaging defendant in conversation. When Dorothy attempted to leave the room, defendant warned her not to "do anything foolish with the phone." Eventually, Rene concluded defendant had no guns, but defendant repeatedly made threats such as "I have friends and, you know, they could burn your house down."

After five to ten minutes, defendant grabbed some keys that were on the kitchen counter, took them to a car parked outside and tried to start it. Rene went with him. Defendant appeared normal when he got into the car, but when the key did not work he returned to the house and became very agitated, saying he was "sick and tired" and wanted to "get out of here."

While Rene and defendant were outside, Dorothy went into the bathroom with a telephone, locked the door and called 911. She was able to provide defendant's name and address to the dispatcher because he had identified himself when he came into the house. She abruptly hung up when she heard defendant trying to use a different phone in the house.

Back in the kitchen, defendant removed his jacket and shirt to reveal a bulldog tattoo on his chest, indicating his gang affiliation. He threw a telephone, billfold and a four- to six-inch straight razor onto the counter. At about that time, the dispatcher called back. Defendant did not react as Rene removed defendant's driver's license from the billfold and read the name, address and driver's license number to the dispatcher.

Defendant obtained the correct keys and drove off in the Van Asten's car. As he was about to drive away, Rene leaned into the car's window and said, "Sergio, don't do this." "[D]on't get into any more trouble." Defendant replied, "No, I'll be okay" and left. The Van Astens were frightened throughout the 20- to 30-minute ordeal. Neither of them gave defendant permission to take their car. Police returned the car to them later that evening, but it required $1,400 in repairs.

An El Dorado County Sheriff's deputy on patrol that evening saw a car and driver matching the description provided by the dispatcher. After a two-minute chase, the deputy pulled the car over. Defendant told the deputy he thought he would try to get away but stopped because he did not want to hurt anybody. The deputy understood what defendant said and observed that defendant did not have any trouble responding to questions; he also said defendant had no trouble walking and did not stumble or fall. The deputy did not observe anything that led him to believe defendant was under the influence of alcohol or another intoxicating substance.

A jury found defendant guilty of first degree residential robbery (Pen. Code, § 211), first degree residential burglary (Pen. Code, § 459), criminal threats (Pen. Code, § 422), unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a)), and driving with willful or wanton disregard for the safety of persons or property while evading an officer (Veh. Code, § 2800.2, subd. (a)). The trial court sentenced defendant to an aggregate prison term of seven years eight months (six years for robbery, one year for a prior prison term and eight months for evading an officer, with additional sentences imposed but stayed). The trial court also awarded 372 days of presentence credit (324 actual days and 48 conduct days), but the abstract of judgment incorrectly indicates an award of 48 actual days and 324 conduct days.

## DISCUSSION

### I

Defendant contends he received ineffective assistance of counsel because his lawyer did not request instructions on (A) mistake of fact or (B) voluntary intoxication.

Ineffective assistance of counsel is established when it is reasonably probable that the outcome of a trial was affected by the defense lawyer's deficient performance. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 693].) There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (*Id*. at p. 689 [80 L.Ed.2d at pp. 694-695].) Accordingly, the

4

defendant bears the burden of proving that his attorney failed to act with reasonable competence and also that a more favorable result was probable in the absence of counsel's failings. (*People v. Price* (1991) 1 Cal.4th 324, 440.)

Instructions concerning a particular defense may be offered only if they are supported by substantial evidence. (*People v. Larsen* (2012) 205 Cal.App.4th 810, 823.) Courts do not measure substantiality of evidence by weighing conflicting evidence or evaluating witness credibility. (*Id.* at p. 827.) Doubts as to the sufficiency of evidence to warrant instructions are resolved in favor of the accused. (*People v. Eid* (2010) 187 Cal.App.4th 859, 879.) But instructions need not be given at all where the supporting evidence for them is minimal or speculative. (*People v. Harris* (1970) 7 Cal.App.3d 922, 926.) A competent attorney is not expected to request unnecessary instructions. (*People v. Castillo* (1997) 16 Cal.4th 1009, 1018.)

A

Defendant claims his trial lawyer should have requested CALCRIM No. 3406 (unreasonable mistake of fact) because Rene's statements were sufficient to allow defendant to reasonably believe Rene had given him permission to take the car. He argues the instruction would have given him a defense to first degree robbery, a specific intent crime.

CALCRIM No. 3406 provides in pertinent part: "The defendant is not guilty of [robbery] if he did not have the intent or mental state required to commit the crime because he did not know a fact or mistakenly believed a fact. [¶] If the defendant's conduct would have been lawful under the facts as he believed them to be, he did not commit [robbery]."

Defendant claims Rene asked him why he wanted the car, and when defendant said he wanted to go "home" to Fresno where his mother and other family members lived, Rene dialed the phone so that defendant could talk to his mother. Defendant also points out that Rene accompanied him to the car and urged him not to get into more

5

trouble. He claims the evidence, viewed in the light most favorable to the defense, shows that defendant, perhaps unreasonably, believed the Van Astens allowed him to borrow their car for a trip to Fresno. We disagree with defendant's characterization of the evidence.

Rene testified unequivocally that neither he nor Dorothy gave defendant permission to take their car and, in fact, they repeatedly told him not to take it. Defendant did not explore consent on cross-examination and he did not testify. The evidence indicates Rene attempted to defuse the situation by talking with defendant, but defendant continued to threaten and frighten the Van Astens until he left.

Defendant's trial counsel was not deficient in failing to request a mistake of fact instruction because there is no substantial evidence to support such an instruction. There is also no showing of prejudice, because even if defense counsel had requested CALCRIM No. 3406, the trial court likely would not have given it, and even if it had been given, there is no evidence to support a different verdict.

B

Defendant also contends he received ineffective assistance of counsel because his lawyer did not request CALCRIM No. 3426 (voluntary intoxication). He claims the instruction would have allowed the jury to find that voluntary intoxication negated the specific intent required for burglary, robbery and criminal threats.

Defendant notes that his girlfriend said he had been drinking wine after the family's Easter egg hunt that afternoon and that, "[a]s far as [she] could tell," he was still drinking when their argument began in the early evening. He also points to descriptions of defendant's erratic behavior by the Van Astens, particularly Dorothy's statement to the 911 operator: "We've got a -- drunk madman in our house."

Evidence that the defendant consumed alcohol before committing a crime is not enough to justify instruction on voluntary intoxication; there must also be evidence regarding the quantity of alcohol consumed and the effect on the defendant's state of

6

mind. (*People v. Carr* (1972) 8 Cal.3d 287, 294.) Here, there were comments about defendant's drinking and the possible effect, but that evidence was minimal and speculative. Although defendant's girlfriend commented that she had not seen defendant drink "like that" before, she also admitted that she did not see him drink that day and did not know how much he drank. Regarding Dorothy's statement that defendant was a "drunk madman," she could not remember whether she said that based on the way defendant was behaving or because she smelled alcohol on him. Rene testified that he did not smell alcohol on defendant, but he thought defendant might have used some substance because defendant was irrational and alternately agitated and calm.

Defendant's girlfriend attributed his irritability and anger to the fact that he "had the stress of the world on his shoulders," and not to intoxication. She described his conduct before he left, but did not mention slurred speech, watery eyes or stumbling. The Van Astens said defendant spoke clearly, responded to what they said, and did not stagger or have trouble walking. In addition, the arresting deputy testified that he observed nothing that led him to believe defendant was under the influence of alcohol or any other intoxicant.

Defendant argues that turning his cell phone, wallet and identification over to the Van Astens showed he was so impaired by alcohol that he could not form the specific intent for criminal conduct. But there is no evidence suggesting why defendant put those items on the counter, and we decline to speculate that it was due to intoxication sufficient to negate specific intent. Defendant also suggests that a defense theory of voluntary intoxication was consistent with the defenses asserted, so "[t]here was nothing to lose by requesting the instruction." Defendant concedes, however, that the "nothing to lose" argument was rejected in *Knowles v. Mirzayance* (2009) 556 U.S. 111, 112-113 [173 L.Ed.2d 251, 255-256], and it lacks merit here.

Defendant's trial counsel was not deficient in failing to request an instruction on voluntary intoxication because substantial evidence does not support the instruction. (See

7

*People v. Williams* (1997) 16 Cal.4th 635, 677 [no instruction warranted because of scant evidence that being " 'doped up' " had any effect on ability to form intent] and *People v. Marshall* (1996) 13 Cal.4th 799, 848 [evidence of consuming large quantity of alcohol did not warrant instruction without evidence of alcohol's affect on defendant's state of mind].) Moreover, defendant has not established the likelihood of a more favorable outcome if the instruction had been given.

Defendant has not established ineffective assistance of counsel.

II

Defendant also points to the discrepancy between the oral award of presentence credit and the recitation of those credits in the abstract of judgment. He contends the number "324" should have been recorded on the abstract of judgment in the "actual days" column and the number "48" should have been recorded in the "conduct" column. The Attorney General agrees. We will order correction of the abstract of judgment. (See *People v. Rowland* (1988) 206 Cal.App.3d 119, 123 [written judgment to be corrected to reflect the sentence pronounced on the record].)

DISPOSITION

The judgment is affirmed. The trial court is directed to correct the abstract of judgment to reflect the orally awarded 372 days of presentence credit, consisting of 324 actual days and 48 conduct days, and to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

        MAURO        , Acting P. J.

We concur:

        MURRAY        , J.

        HOCH        , J.