Filed 9/30/25  P. v. Taray J. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TARAY J.,<br><br>    Defendant and Appellant. | B340061<br><br>(Los Angeles County<br>Super. Ct.<br>No. IJ0334A) |

APPEAL from an order of the Superior Court of Los Angeles County, Pamela M. Villanueva, Judge.  Affirmed.

Laini Millar Melnick, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, and Noah P. Hill and Deepti Vaadyala, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

After his 2001 sentence for murder and attempted murder was recalled and the matter certified to the juvenile court, the People filed a motion to transfer the now-44-year-old Taray J. to "adult court." The juvenile court granted the motion. Defendant argues that the court made procedural and substantive errors. We conclude there was no such error, and affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Defendant's Early Criminal History

Defendant was born in 1981. Defendant committed several crimes, and several attempts at rehabilitation were unsuccessful:

-- In 1992, defendant (while age 11) committed grand theft; the case was closed after he was placed on probation.

-- In 1994, defendant (while age 13) committed battery; the case was closed after he was placed on probation.

-- In 1995, defendant (while age 14) committed assault with a firearm; defendant was placed in a juvenile camp for 35 weeks.

-- In 1996, defendant (while age 15), resisted, delayed or obstructed a peace officer after he evaded an arrest that necessitated 12 police units and an airship; defendant was placed in a juvenile camp for 8 months.

During this time, defendant belonged to the Playboy Hustler Crips street gang.

## II. The Underlying Crimes and Prosecution
### A. *The Crimes*

While defendant was 17 years old and being closely supervised by the Probation Office following his release from juvenile camp for resisting, delaying or obstructing a peace officer, defendant engaged in two homicides on behalf of the Playboy Hustler Crips.

In the early morning hours of July 27, 1998, defendant walked up to Robert Swain, who was dropping off his girlfriend in a neighborhood claimed by the Fifty-Second Street Hoover gang. This gang was a rival of the Playboy Hustler Crips. Defendant asked Swain his gang affiliation. Swain denied any, but defendant pulled out a gun and shot Swain six times, killing him.

Two days later, defendant, fellow Playboy Hustler Curtis Canady, and Ronald Conley drove a stolen car into a neighborhood claimed by the Fifty-Ninth Street Hoover gang. This gang was also a rival of the Playboy Hustler Crips. Conley was a member of an affiliate gang to the Playboy Hustler Crips. Defendant and Conley were looking for a man named Dumar Fisher. They found him in a parked car with three other teenagers, including a pregnant 13-year-old. They drove by, then circled back to pull up alongside Fisher's car. Either defendant or someone else in his car said, "This is for you, Dumar." They pulled out guns and opened fire on the cars' occupants. They shot Fisher in the arm, but killed a 17-year-old woman in the car. They drove to the apartment of Canady's girlfriend, changed out of the clothes they used, and told the girlfriend about the shooting; defendant tried to get Canady to stop telling his girlfriend about their crimes.

**B.** *Prosecution, conviction and appeal*

In June 1999, the People filed a petition in juvenile court charging defendant with the murder of Swain (Pen. Code, § 187),[1] the murder of the woman in Fisher's car (§ 187) as well as the attempted murder of the car's three other occupants (§§ 187, 664). The petition also alleged firearm and gang enhancements as well as two special circumstances—namely, that there were multiple murders (§ 190.2, subd. (a)(3)) and that one of the murders was committed by drive-by shooting (*id.*, subd. (a)(21)).[2] The juvenile court granted the People's motion to transfer the matter to adult court. A jury convicted defendant of these crimes, with true findings on the gang and firearm enhancements and special circumstances, as alleged. The trial court sentenced defendant to prison consecutively for two life terms without the possibility of parole (one for each murder), plus three life terms (one for each attempted murder), plus four terms of 25 years to life and a further term of 23 years (for the firearm enhancements). A different panel of this Court affirmed the convictions and sentence in 2002.[3]

## III. Defendant's Conduct While In Prison

Defendant committed several infractions while serving his prison sentence in the underlying case:

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The petition also alleged defendant's involvement in a third murder/robbery, of which defendant was found not guilty.

[3] The Court affirmed the conviction but modified the sentence on one of the attempted murder counts to life with a minimum parole eligibility of 15 years, plus a consecutive 20 years.

4

-- In June 2003, defendant was involved in a mutual combat.

-- In April 2004, defendant participated in a riot.

-- In November 2003 and August 2005, defendant refused to obey direct orders.

-- In June 2003, December 2003, May 2007, September 2009, April 2012, April 2014, November 2017, and April 2019, defendant possessed various forms of contraband (from alcohol to controlled substances to altered AA batteries).

-- In October 2011, February 2012, November 2016, November 2017, December 2017, July 2019, and November 2020, defendant possessed a cell phone.

-- In September 2017, defendant committed a battery on another inmate.

-- In March 2018, defendant had possession of paraphernalia to make tattoos.

Defendant obtained a number of new tattoos reflecting gang affiliation while in prison. Defendant also made a number of calls from prison indicating his continued affiliation and identification as a gang member as well as his desire to do violence against anyone who harms his fellow gang members, even though the Playboy Hustlers gang was no longer an active gang on the streets.

Starting in 2017, defendant participated in a number of rehabilitative and other programs in prison.

## IV. Recall of Sentence and Second Transfer Motion

In August 2023, the trial court granted defendant's motion to recall his sentence pursuant to section 1170, subdivision (d)(1). Although defendant was at this time 42 years old, the matter was certified to the juvenile court.

The People moved to transfer the matter to adult court. In support, the People submitted an updated report on defendant by the Probation Office. In that report, the Probation Officer detailed defendant's juvenile criminal history, recounted his disciplinary history while in custody, and recommended transfer to adult court due to the "great deal of criminal sophistication" in the charged crimes, the absence of "time remaining to provide [defendant] rehabilitation," his "substantial delinquency history," the failure of previous attempts at rehabilitation that resulted in the "escalat[ion]" of his criminal behavior, and the "very serious and extremely high" "gravity of the offenses."

Defendant filed a written opposition. In support of the opposition, defendant offered the expert opinion of Erin Parker, who opined that defendant is "amenable to rehabilitation" because she perceived "a trend through the years of [his] incarceration of coming to terms with the consequences of his past misconduct, ceasing self-destructive behavior, and investing in self-improvement" as evidenced by his remaining "disciplinary free for over three years." Parker urged that defendant's prison disciplinary history should be discounted because the nature of his underlying crimes made it difficult for him to get programming during the first three years of his incarceration.[4] Defendant also submitted a detailed re-entry plan that could be followed if he were released into the community.

The matter proceeded to a transfer hearing over the course of 14 days in June and July 2024. The People called four

---

[4]  Defendant initially offered the opinions of two other experts—Nicole Vienna and Gangaw Zaw. However, defendant withdrew his reliance on those experts' opinion during the hearing.

witnesses, including the (now-retired) probation officer who supervised defendant after his release from the second camp and at the time defendant committed the charged crimes. The officer noted defendant's pattern of appearing "amenable" to rehabilitation by "saying the right things" to authority figures, but that this appearance was deceiving because he would simultaneously elude supervision and continue his gang lifestyle. The officer recounted that defendant would regularly "disappear" from his high-level supervision, which necessitated the officer obtaining five bench warrants, and that defendant used a false name and false date of birth to avoid detection. The officer further testified that defendant was a "strong kid" and not a "pushover." The People also called a current probation officer who testified that no juvenile facility could house a 43-year-old man and that most adults who were re-sentenced as juveniles were immediately "stepped down" and released into the community.

Following several days of closing argument, the juvenile court issued both an oral and written ruling granting transfer of defendant's case to adult court. The court acknowledged that its chief task was to assess whether defendant was "amenable for rehabilitation," and proceeded to analyze each of the five statutory factors set forth in Welfare and Institutions Code section 707 that bear on amenability:

-- The court found that defendant exhibited a "criminal sophistication" that made him "unamenable" to rehabilitation. In making this finding, the court cited (1) defendant's age, his closeness to graduating high school, his good health and his "demonstrated maturity by living on his own," holding down "several jobs," and demonstrating sufficient maturity to be

granted furlough from some of the juvenile camps; (2) defendant's ability to "appreciate[e] risk" by arming himself with a different gun for each murder, committing the drive-by shooting in a stolen car, "hiding evidence" of the drive-by shooting by "fleeing the scene, hiding clothing in the trash," establishing an alibi and "instruct[ing] a co-defendant to stop talking about the murder"; and (3) the absence of any "evidence of peer pressure" or family condoning of the gang lifestyle that would apply pressure to defendant.

-- The court found that defendant could not be rehabilitated prior to the expiration of juvenile court's jurisdiction, which made him "unamenable" to rehabilitation. In making this finding, the court noted that "[t]wo camp commitments and 25 years in state prison have not been shown to reform [defendant]," noted defendant remained ranked as a moderate to high risk of reoffending, and noted that he had obtained *new* gang tattoos in prison and "engaged in gang jail calls showing his current affiliation with the gang."

-- The court found that defendant's previous delinquent history made him "unamenable" to rehabilitation. In making this finding, the court recounted defendant's "extensive" delinquent history, and noted that two camp placements and intense supervision did not stop defendant from "go[ing] back to the gang neighborhood."

-- The court found that defendant's "previous attempts to rehabilitate" made him "unamenable" to rehabilitation. In making this finding, the court noted that "the camp commitments and the furloughs" home from camp prompted by letters from defendant showing "maturity and a desire to change" had been unavailing because defendant thereafter "re-offended," and noted

8

that defendant's quarter century in prison was marked by "pretty extensive" misconduct within prison, "a lot" of new gang tattoos, and "gang phone calls" "indicating a desire and willingness to commit future crimes."

-- The court found that the circumstances and gravity of the offenses alleged in the petition made him "unamenable" to rehabilitation. In making this finding, the court noted that "murder" is "obviously the most grave crime that can come before the court," and that defendant stands convicted of "two special circumstance murders" and "three attempted murders."

The court summed up by noting that, although "[t]he weight to any factor is within the court's discretion," that defendant "has shown [a] lack of amenability as to all 5 criteria," such that the "prosecutor has shown by clear and convincing evidence" that defendant "should be transferred to the jurisdiction of the criminal court."

V.    **Appeal**

Defendant filed this timely appeal.

## DISCUSSION

Defendant argues that the juvenile court erred in granting the People's motion to transfer to adult court because (1) the court did not analyze the five pertinent statutory factors bearing on transfer "through the lens of amenability," and (2) substantial evidence does not otherwise support the juvenile court's findings as to the statutory factors or its overall finding that defendant is not amenable to rehabilitation as a juvenile. Although the ultimate transfer decision is reviewed for an abuse of discretion (*In re J.S.* (2024) 105 Cal.App.5th 205, 211 (*J.S.*)), we review de novo whether the court applied the proper legal standard and review its subsidiary factual findings for substantial evidence

9

(*Kevin P. v. Superior Court* (2020) 57 Cal.App.5th 173, 187 (*Kevin P.*); *In re Miguel R.* (2024) 100 Cal.App.5th 152, 165 (*Miguel R.*)).

## I.  Application of Proper Legal Standard

As the law stands today, the People may move to transfer to adult court any minor 16 years of age or older alleged to have committed one of several enumerated offenses, which include murder and attempted murder.  (Welf. & Inst. Code, § 707, subds. (a)(1), (b)(1) & (b)(13); *D.W. v. Superior Cour* (2019) 43 Cal.App.5th 109, 116.)  To prevail on this motion, the People must establish, by clear and convincing evidence, that the minor is "not amenable to rehabilitation while under the jurisdiction of the juvenile court."  (Welf. & Inst. Code, § 707, subd. (a)(3); *In re S.S.* (2023) 89 Cal.App.5th 1277, 1282 (*S.S.*) ["'amenab[ility] to rehabilitation'" is the "ultimate determination"]; *J.S., supra*, 105 Cal.App.5th at p. 212.)  In making this determination, a juvenile court "shall consider" five statutorily enumerated criteria—namely (1) "[t]he degree of criminal sophistication exhibited by the minor," (2) "[w]hether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction," (3) "[t]he minor's previous delinquent history," (4) "[s]uccess of previous attempts by the juvenile court to rehabilitate the minor," and (5) "[t]he circumstances and gravity of the offense alleged in the petition to have been committed by the minor."  (Welf. & Inst. Code, § 707, subds. (a)(3)(A)(i), (a)(3)(B)(i), (a)(3)(C)(i), (a)(3)(D)(i), & (a)(3)(E)(i).)  The juvenile court is also to "give weight to any relevant factor" bearing on each of the enumerated criteria, and the governing statute now enumerates factors for each.  (*Id.*, subds. (a)(3)(A)(ii), (a)(3)(B)(ii), (a)(3)(C)(ii), (a)(3)(D)(ii), (a)(3)(E)(ii).)  A court ordering transfer must state "the reasons supporting [its] finding that the minor is not amenable to

10

rehabilitation while under the jurisdiction of the juvenile court" (*id.*, subd. (a)(3)), which "include[es] how it weighed the evidence and identif[ies] the specific factors on which the court relied to reach its decision" (Cal. Rules of Court, rule 5.770(c)).

The trial court did not misapply this legal standard. The court focused on the key question of whether defendant was amenable to rehabilitation while under the juvenile court's jurisdiction, examined each of the five statutory criteria and discussed the statutorily enumerated factors bearing on each criteria, found that each of the five criteria supported its finding of non-amenability (thus obviating any need to assign a particular weight to any of the criteria), and ultimately found by clear and convincing evidence that defendant was not amenable to rehabilitation.

Defendant generally argues that the juvenile court's analysis did not examine the five criteria "through the lens of amenability," and more specifically asserts that the court's examination of the criminal sophistication, prior delinquent history and gravity of offense criteria is deficient because the court either did not "mention . . . amenability to rehabilitation" or did not "explain how [the factors discussed by the court] supported its finding that [defendant] was not amenable to rehabilitation."

Defendant's argument lacks merit. Defendant's assertion that the court did not "mention amenability" as to each criterion is unsupported by the record because the juvenile court explicitly found that each of the five statutory criteria supported a finding of non-amenability to rehabilitation. Defendant's assertion that the court was required to explain how each factor it examined supported a finding of non-amenability is unsupported by the

11

law.  The pertinent statute and Rule of Court obligate a court to state its reasons, to describe how it weighed the evidence and to identify the specific factors the court relied upon; they do not invariably obligate a court to also explain *why* a particular factor relates to or supports a finding of non-amenability.  That makes good sense.  The link between various factors and amenability (or lack of amenability) is often obvious:  A juvenile with a more serious delinquent history or who failed to succeed in prior rehabilitation efforts despite receiving adequate probationary services is obviously less likely to be amenable to rehabilitation.  In the absence of an explicit command, the law does not require courts to restate the obvious.  (See *People v. Castillo* (1997) 16 Cal.4th 1009, 1018 [no need for jury instructions that "stat[e] the obvious"].)  Defendant cites *S.S.*, *supra*, 89 Cal.App.5th 1277, in support of his position, but *S.S.* held that a new transfer hearing is required when a court focuses on "fitness" rather than "amenability," and concluded that the court in that case had improperly analyzed some of the statutory criteria; *S.S.* did not purport to fashion a new requirement for what findings must be explicitly stated on the record.  (*Id.* at pp. 1286-1294.)

## II.    Substantial Evidence

In evaluating whether a juvenile court's finding that a juvenile is not amenable to rehabilitation is supported by substantive evidence, we ask whether the record—construed in the light most favorable to the court's findings—rationally supports a finding of non-amenability by clear and convincing evidence.  (*Miguel R.*, *supra*, 100 Cal.App.5th at p. 165.)

Substantial evidence supports the juvenile court's findings that each of the five statutory criteria support a finding that defendant is not amenable to rehabilitation while under the

jurisdiction of the juvenile court, for the reasons the juvenile court articulated in its oral and written rulings. Defendant urges that other evidence supports a finding of amenability to rehabilitation—namely, (1) evidence that, since 2017, defendant obtained vocational training, earned two positive comments in his chrono file, and was dropped from security level 4 to security level 3; (2) the opinion of defendant's expert witness that defendant is amenable to rehabilitation; (3) his post-release re-entry plans; (4) the absence of any evidence that defendant acted on any of the gang-related comments he made on the jailhouse calls (because he was instead engaged in "ill-advised bravado"); and (5) the absence of any evidence that defendant committed more heinous disciplinary violations while in prison, such as assaulting staff, possessing weapons or promoting gang activity.[5] Both explicitly and implicitly, defendant is asking us to reweigh the evidence and to come to a different conclusion than the juvenile court; this is beyond our purview under substantial evidence review. (*In re I.J.* (2013) 56 Cal.4th 766, 773.) To the extent defendant is asserting that the evidence he cites in his favor dictates a finding of amenability to rehabilitation *as a matter of law*, he is incorrect: Defendant's recent positive progress is not dispositive in light of his documented pattern of "saying the right things" to authority figures while continuing to engage in and plan inappropriate activities; the opinion of defendant's expert witness may be disregarded in light of the competing opinion from the People's witness (*J.S.*, *supra*, 105 Cal.App.5th at p. 212 ["the juvenile court was not required to

---

[5]　　Defendant also argues that he obtained gang tattoos not to support gang activity or affiliation but out of necessity to blend in, but he offers no *evidence* on these points.

credit the testimony of the defense experts"]); and the fact that defendant has not engaged in *more* heinous behavior does not negate his other violations.  To the extent that defendant asserts that the juvenile court erred in not mentioning all of defendant's evidence before implicitly finding it to be less persuasive than the competing evidence, that assertion is unpersuasive where, as here, the court has indicated that it has considered all of the evidence presented; it is not obligated to recount all of it again. (*J.S.*, at p. 214 [court that indicates it relied on all evidence need not address all adverse evidence in its ruling]; *Kevin P.*, *supra*, 57 Cal.App.5th at p. 193 [relying on implicit findings permitted]; see *People v. Tully* (2012) 54 Cal.4th 952, 1064.)[6]

---

[6]     For the first time in his reply brief, defendant suggests that there is not substantial evidence to support the factor that defendant cannot "be rehabilitated prior to the expiration of the juvenile court's jurisdiction" because the People's report indicates that defendant may be subjected to a maximum of two years of supervision, which defendant contends is incorrect because there is no such time limit.  This argument is both waived (because not raised until the reply brief) and meritless (because Welfare and Institutions Code section 607, subdivision (d) explicitly erects a two-year maximum term).

**DISPOSITION**

The order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, P. J.

HOFFSTADT

We concur:

_____, J.

BAKER

_____, J.

MOOR