Filed 11/27/23  P. v. Viveros CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MARCOS VIVEROS,<br><br>    Defendant and Appellant. | F084608<br><br>(Kern Super. Ct. No. BF181346A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Brian M. McNamara, Judge.

David W. Beaudreau, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Kari R. Mueller, Amanda D. Cary, and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

A jury convicted defendant and appellant Marcos Viveros of attempted murder (count 1; Pen. Code,[1] §§ 187, subd. (a), 664), finding true it was deliberate and premediated (§ 189, subd. (a)); assault with a firearm (count 2; § 245, subd. (a)(2)); criminal threats (count 3; § 422); grossly negligent discharge of a firearm (count 4; § 246.3, subd. (a)); being a felon in possession of a firearm (count 5; § 29800, subd. (a)(1)); unlawful possession of ammunition (count 6; § 30305, subd. (a)(1)); two counts of inflicting corporal injury on a person in a dating relationship (counts 7 and 10; § 273.5, subd. (a)); robbery (count 8; § 212.5, subd. (a)); and stalking (count 9; § 646.9, subd. (a)). The jury found true appellant used a firearm (§§ 12022.5, subd. (a), 12022.53, subd. (b)) and discharged a firearm (§ 12022.53, subd. (c)) in count 1 and that he used a firearm (§ 12022.5, subd. (a)) in counts 2, 3, and 7.

Appellant raises three challenges to his sentence on appeal. First, appellant claims the trial court gave a legally erroneous jury instruction on voluntary intoxication that precluded the jury from considering voluntary intoxication evidence as it relates to premeditation and deliberation. Second, appellant claims his felony conviction for count 10 should be reversed since it was charged as a misdemeanor for all purposes pursuant to section 17, subdivision (b)(4). Third, appellant claims the trial court violated the Sixth Amendment by relying on aggravating circumstances to impose upper term sentences that were not found true beyond a reasonable doubt and do not comply with section 1170, subdivision (b).

We conclude the voluntary intoxication instruction was legally erroneous but that the error was harmless; the court erred when it accepted the People's motion to amend count 10 to a felony after they chose to charge it as a misdemeanor under section 17, subdivision (b)(4) for all purposes; and that the imposition of the upper terms violated the

---

[1] All further undesignated statutory references are to the Penal Code unless otherwise stated.

Sixth Amendment and do not comply with section 1170, subdivision (b). Therefore, we vacate the sentence, modify count 10 to reflect a misdemeanor and remand for full resentencing. In all other respects, we affirm the judgment.

# FACTUAL BACKGROUND

## I.      April 3, 2019 Incident

A.R. was in a dating relationship with appellant. She testified that during her relationship with appellant, he would drink beer every other day, and they smoked weed together every day. A.R. did not drink.

On April 3, 2019, A.R. woke up to appellant pulling her off the bed and saying, "[W]ake up bitch." A.R. described appellant as being in an extreme state of anger. Appellant saw messages on A.R.'s cell phone that appeared to be between A.R. and another man. Appellant did not believe A.R.'s explanation that the messages were forwarded from her friend. Appellant told A.R. he was going to kill her and himself. Appellant grabbed a handgun from somewhere in the room. He sat on the bed with the gun in his hand while A.R. stood about three feet in front of him. Appellant then pointed the gun at A.R. and said, "I'm gonna f[**]kin' kill you bitch." A.R. saw appellant's fingers curl around the trigger. When appellant's fingers moved, A.R. hit his arm and pushed the gun up and to the side. The gun discharged next to A.R.'s right ear. A.R.'s face was bright red, and the side of her face hurt. The gunshot impacted A.R.'s hearing.

A.R. testified she knew what appellant was like when he was drunk or "stoned" and said he was maybe stoned but not drunk on the night of the incident. The officer who transported appellant after arrest said that he looked at appellant to see if he had been drinking alcohol, and he did not appear to be drinking alcohol or under the influence of narcotics.

## II.      March 23, 2020 Incident

A neighbor saw appellant and A.R. walking to a store and saw appellant "pick [A.R.] up by [her] throat." Appellant was holding A.R. by her neck, "kind of in a

headlock," cussing and giving her commands like which way he wanted her walking. A.R. pushed back against the headlock but did not give a lot of resistance. Appellant appeared intoxicated as he was stumbling and fumbling while he walked. The neighbor called the police, but A.R. denied appellant hurt her. After the police left, appellant and A.R. started arguing and physically fighting. Appellant pushed, punched, and kicked A.R. Appellant took money out of A.R.'s wallet and left.

## III. Stipulation

Appellant stipulated that he was previously convicted of a felony before these incidents.

## IV. Information and Verdict

Appellant was charged with the following: attempted murder (§§ 187, subd. (a), 664; count 1) alleging the attempted murder was deliberate and premeditated (§ 189, subd. (a)), that appellant used a firearm (§§ 12022.5, subd. (a), 12022.53, subd. (b)) and that he discharged a firearm (§ 12022.53, subd. (c)); assault with a firearm (§ 245, subd. (a)(2); count 2) alleging appellant used a firearm (§ 12022.5, subd. (a)); criminal threat (§ 422; count 3) alleging appellant used a firearm (§ 12022.5, subd. (a)); discharging a firearm with gross negligence (§ 246.3, subd. (a); count 4); unlawful possession of a firearm by a felon (§ 29800, subd. (a)(1); count 5); unlawful possession of ammunition by a felon (§ 30305, subd. (a)(1); count 6); two counts of inflicting corporal injury (§ 273.5, subd. (a); counts 7 & 10) alleging appellant used a firearm in count 7 (§ 12022.5, subd. (a)); first degree robbery (§ 212.5, subd. (a); count 8); and stalking (§ 646.9, subd. (a); count 9). The prosecutor elected to charge count 10 as a misdemeanor pursuant to section 17, subdivision (b)(4).

Before trial, the prosecutor moved to amend the information to strike the election under section 17, subdivision (b)(4) to make count 10 a felony. Appellant objected, but the trial court granted the prosecutor's motion and amended the information, making

count 10 a felony. Appellant was arraigned on the amended information and pled not guilty.

On August 12, 2021, a jury convicted appellant of all counts and found true all allegations. On June 29, 2022, appellant was sentenced to an indeterminate term of seven years to life, plus a determinate term of 26 years eight months. Specifically, the court imposed life in prison with the possibility of parole after seven years on count 1, plus 20 years for discharging a firearm for count 1; imposed and stayed pursuant to section 654 the upper term on counts 2 through 7; a six-year upper term on count 8; and a consecutive eight-month term on count 9.

## DISCUSSION

### I. The Trial Court Erred by Precluding Premeditation and Deliberation in the Voluntary Intoxication Instruction, but the Error Was Harmless

Appellant contends the premeditation and deliberation allegation should be reversed because the court's voluntary intoxication instruction precluded the jury from considering evidence of appellant's intoxication when deciding premeditation and deliberation. The People first argue appellant forfeited this claim by failing to request an instruction relating voluntary intoxication to premeditation and deliberation. Second, the People argue that the evidence of intoxication was so weak that no instruction was warranted, and any error could not have prejudiced appellant. We agree that the court erred by precluding premeditation and deliberation in its voluntary intoxication instructions, but conclude the error was harmless.

#### A. *Relevant Background*

At trial, A.R. described appellant's daily habits, which included drinking beer every other day and smoking marijuana. A.R. did not think appellant was "drunk" during the incident but thought he might have been "stoned."

After the close of evidence, the trial court asked defense counsel whether there were instructions the court was going to read that he requested the court not read; or

5.

instructions he requested the court to read but refused to read. Defense counsel responded "no" to both inquiries. The court asked the prosecutor about the voluntary intoxication instruction, and the prosecutor asked the court not to read the instruction because he "felt there was insufficient evidence to bring this to the attention of the jury," and that it could be handled in argument. The court reminded the parties that this instruction was not a sua sponte instruction, but one given upon request. Defense counsel affirmed that he requested the voluntary intoxication instruction and was still comfortable with the instruction. The court determined the evidence of intoxication "weaved in and out" and accepted the instruction.

The court gave the following instruction regarding voluntary intoxication:

"You may consider evidence if any of the [appellant]'s voluntary intoxication only in a limited way. You may consider that evidence only in deciding whether the [appellant] acted or failed to do an act with the required specific intent in Count[] 1 .… [¶]

"A person is voluntarily intoxicated if he or she becomes intoxicated by willingly using any intoxicating drug, drink, or other substance knowing that it could produce an intoxicating effect or willingly assume the risk of that effect.

"In connection with the charge of attempted murder Count [1] … the People have the burden of proving beyond a reasonable doubt that the [appellant] acted with the intent to kill. If the People have not met this burden, you must find the [appellant] not guilty of attempted murder .… [¶] … [¶]

"Do not consider evidence of voluntary intoxication for any other purpose. Voluntary intoxication is not a defense to the crimes charged in Counts Two, Four, Five, Six, Seven or Ten or the lessor included offense of Penal Code Section 243(E)(1) in Counts Seven and Ten."

During closing arguments, defense counsel did not argue that premeditation and deliberation were affected by voluntary intoxication.

6.

**B.** *Standard of Review and Applicable Law*

Section 29.4, subdivision (a) states that "[n]o act committed by a person while in a state of voluntary intoxication is less criminal by reason of his or her having been in that condition. Evidence of voluntary intoxication shall not be admitted to negate the capacity to form any mental states for the crimes charged, including, but not limited to, purpose, intent, knowledge, premeditation, deliberation, or malice aforethought, with which the accused committed the act."

"Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, or, when charged with murder, whether the defendant premeditated, deliberated, or harbored express malice aforethought." (§ 29.4, subd. (b).) "Voluntary intoxication includes the voluntary ingestion, injection, or taking by any other means of any intoxicating liquor, drug, or other substance." (*Id.*, subd. (c).)

With the statutory elimination of diminished capacity as a defense, there is no sua sponte duty to instruct on the effect of voluntary intoxication on the mental states required for attempted murder. (§ 28, subd. (b); *People v. Saille* (1991) 54 Cal.3d 1103, 1119–1120 (*Saille*); *People v. Castillo* (1997) 16 Cal.4th 1009, 1016 [includes attempted murder] (*Castillo*).) Voluntary intoxication is now more like a "pinpoint" instruction to which a defendant is entitled upon request. (*Saille*, at p. 1119.) Such instructions are required to be given only upon request when there is evidence supportive of the theory, but they are not required to be given sua sponte. (*Ibid.*; *People v. Ricardi* (1992) 9 Cal.App.4th 1427, 1432 [no sua sponte duty to instruct on voluntary intoxication but must give this instruction on request]; *Castillo*, at p. 1014.)

Evidence of voluntary intoxication is " 'admissible solely on the issue of whether or not the defendant *actually* formed a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged.' " (*Castillo*, *supra*, 16 Cal.4th at p. 1013; *Saille*, *supra*, 54 Cal.3d at pp. 1111–1112; § 29.4,

subd. (b).)  Although voluntary intoxication is not an affirmative defense to a crime, the jury may consider evidence of voluntary intoxication and its effect on the defendant's required mental state.  (§ 29.4; *People v. Reyes* (1997) 52 Cal.App.4th 975, 982–986 [relevant to knowledge element in receiving stolen property]; *People v. Mendoza* (1998) 18 Cal.4th 1114, 1131–1134 [relevant to mental state in aiding and abetting].)

We review de novo a claim of instructional error.  (*People v. Posey* (2004) 32 Cal.4th 193, 218 ["[t]he independent or de novo standard of review is applicable in assessing whether instructions correctly state the law"].)

## C.    *Analysis*

Appellant argues the court's instruction on voluntary intoxication was an incorrect statement of law because it "improperly precluded the jury from considering evidence of voluntary intoxication when deciding whether [appellant] acted with premedication and deliberation as charged in count 1."  The People argue appellant's claim is forfeited because the court did not have a sua sponte duty to give the pinpoint instruction on premeditation and deliberation and appellant failed to object to the court's instruction.  However, appellant contends forfeiture does not apply where the court fails to give a correct statement of law.

Generally, because the trial court has no sua sponte duty to instruct on the pinpoint instruction for voluntary intoxication, failing to raise the issue in the trial court may result in forfeiture.  (See *People v. Virgil* (2011) 51 Cal.4th 1210, 1260 [failure to object to instruction forfeits claim on appeal]; *People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1037 [same].)  Here, appellant requested the instruction on voluntary intoxication but contends the court erred when it did not instruct that "voluntary intoxication evidence was relevant to two distinct mental states: the intent to kill required for the attempted murder charge *and* the premeditation and deliberation required for the separate allegation."  However, appellant did not request the specific pinpoint instruction relating voluntary intoxication to premeditation and deliberation.

8.

In *Saille*, "the instructions given (CALJIC No. 4.21) related voluntary intoxication only to the question of whether defendant had the specific intent to kill" and did not include the mental state for premeditation and deliberation. (*Saille*, *supra*, 54 Cal.3d at p. 1117.) The defendant contended that the court should have instructed sua sponte that the jury could consider his voluntary intoxication in determining whether he had premeditated and deliberated the murder. (*Ibid*.) The court noted that "[t]he abolition of the defense of diminished capacity had eliminated the need for a sua sponte instruction relating mental illness or voluntary intoxication to the required mental states." (*Id*. at pp. 1117, 1119.) The court concluded the court did not err in failing to instruct sua sponte on premeditation and deliberation since evidence of intoxication does not involve a " 'general principle of law.' " (*Id*. at p. 1120.)

Here, the trial court gave the CALCRIM equivalent to the instruction given in *Saille* on voluntary intoxication, similarly telling the jury they may consider evidence of appellant's voluntary intoxication "only in deciding whether the defendant acted or failed to do an act with the required specific intent .…" (See CALCRIM No. 3426; CALJIC No. 4.21.) Like in *Saille*, the instruction did not relate voluntary intoxication to mental state or premeditation and deliberation. Appellant requested the voluntary intoxication instruction but did not request the specific pinpoint instruction relating voluntary intoxication to premeditation and deliberation. On this point, the court did not err in not adding the premeditation and deliberation portion of the voluntary intoxication instruction where appellant did not request it.

However, knowing that the trial court does not have a sua sponte duty to instruct on the pinpoint instruction on premeditation and deliberation, appellant claims that the instruction the court gave regarding voluntary intoxication was legally incorrect. As the People point out, under the doctrine of invited error, appellant could be barred from challenging the instruction since it was appellant who requested the voluntary intoxication instruction. The Supreme Court, in *People v. DeHoyos* (2013) 57 Cal.4th 79,

9.

explained that the "doctrine of invited error bars [an appellant] from challenging a jury instruction given by the trial court when the [appellant] has requested the instruction based on a ' " ' "conscious and deliberate tactical choice." ' " ' " (*Id*. at p. 138.) However, unlike in *DeHoyos*, where the defendant was barred from challenging the instruction he requested, appellant is not challenging the voluntary intoxication instruction, but claiming that the court erred by giving an incorrect statement of law when it gave the instruction.  As our Supreme Court has recognized, when a court "does choose to instruct, it must do so correctly." (*Castillo, supra,* 16 Cal.4th at p. 1015; *People v. Pearson* (2012) 53 Cal.4th 306, 325.)  As such, appellant's claim that the instruction was legally incorrect is not forfeited.  (See *People v. Capistrano* (2014) 59 Cal.4th 830, 875, fn. 11, overruled on other grounds in *People v. Hardy* (2018) 5 Cal.5th 56, 104 ["[w]here, however, defendant asserts that an instruction is incorrect in law an objection is not required"]; *People v. Hudson* (2006) 38 Cal.4th 1002, 1012 [no forfeiture where trial court gave incorrect statement of the law]; *People v. Smith* (2017) 12 Cal.App.5th 766, 778, fn. 5 [no forfeiture of argument that instruction incorrectly stated the law].)

Specifically, here, appellant claims that the instruction unlawfully precluded the jury from considering voluntary intoxication as it relates to premeditation and deliberation.  However, "[e]vidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, or, when charged with murder, whether the defendant premeditated, deliberated, or harbored express malice aforethought." (§ 29.4, subd. (b).)  As such, appellant's claim is cognizable on appeal.

Our Supreme Court, in *Castillo*, *supra*, 16 Cal.4th 1009 and *People v. Hughes* (2002) 27 Cal.4th 287, provides some guidance on the issue of whether the court's instruction on voluntary intoxication was misleading when it failed to include the mental state of premeditation and deliberation.  In *Hughes*, the defendant claimed that his convictions should be reversed because the jury instruction on voluntary intoxication,

delivered at defense counsel's request, " 'eviscerated' " the defendant's voluntary intoxication defense to those charges. (*Hughes*, *supra*, at p. 340.) The trial court had instructed the jury that the defendant's intoxication should be considered in determining whether the defendant possessed the " 'specific intent and/or mental state' " required. The defendant did not request the specific pinpoint instruction on premeditation and deliberation. (*Id.* at p. 342.) The *Hughes* court found no error, holding that " 'by relating intoxication to "mental state," a reasonable jury would have understood deliberation and premeditation to be "mental states" for which it should consider the evidence of intoxication." (*Ibid.*)

In *Castillo*, the appellate court criticized the instruction given on voluntary intoxication because it did not include "mental state," which it felt would have been required for premeditation and deliberation. (*Castillo*, *supra*, 16 Cal.4th at p. 1016.) Even though the appellate court recognized no request was made by the defendant, it found the instruction "misleading because 'when the first sentence of the version of CALJIC No. 4.21 that was read to the jury referred to "the specific intent to kill" and was completely silent as to mental state, [it felt] a conscientious juror would have understood it to pertain *only* to the charge of *attempted* murder, and not to the concept of premeditation as to either the attempted or the … actual murder[].' " (*Ibid.*)

However, the Supreme Court disagreed with the appellate court and concluded "[t]he instructions *as a whole* … were not misleading." (*Castillo*, *supra*, 16 Cal.4th at p. 1016.) " '[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction.' " (*Ibid.*; *People v. Burgener* (1986) 41 Cal.3d 505, 538.) " ' "The absence of an essential element in one instruction may be supplied by another or cured in light of the instructions as a whole." ' " (*Castillo*, at p. 1016; *Burgener,* at p. 539.) Even though the trial court did not include "mental state" when it told the jury what voluntary intoxication could be considered for, it did relate voluntary intoxication to " 'specific

11.

intent or mental state' " elsewhere in the instructions. (*Castillo, supra,* at p. 1016.) The instructions correctly explained that, for the jury to find the defendant guilty of first degree murder, it must find he acted with " 'deliberation and premeditation.' " (*Ibid*.) The court further explained that the defendant's deliberation and premeditation to kill " 'must have been formed upon preexisting reflection and not upon a sudden heat of passion or other condition precluding the idea of deliberation .…' " (*Ibid*.) "A reasonable jury would have understood deliberation and premeditation to be 'mental states' for which it should consider the evidence of intoxication as to either attempted murder or murder." (*Ibid*.) Therefore, "[a]lthough the trial court might have adapted the first paragraph of CALJIC No. 4.21 to refer to both the specific intent necessary for murder and the additional mental state necessary for first degree murder, its failure to do so did not mislead the jury in light of the rest of the instructions." (*Id*. at p. 1017.) Since the trial court expressly stated the jury could consider intoxication " 'where a specific intent *or mental state* is an essential element of the crime' " (*ibid*., italics added by *Castillo*), the *Castillo* court held that "[n]o reasonable juror would understand the instructions to permit the jury to consider intoxication in determining whether defendant specifically intended to kill but to prohibit it from considering that same intoxication in determining whether he premeditated and deliberated." (*Ibid*.) The *Castillo* court concluded the trial court "did not breach its duty to instruct correctly once it decided to instruct on voluntary intoxication." (*Id*. at p. 1018.)

Here, even when considering the court's instructions as a whole, the trial court failed to expressly instruct anywhere that the jury could consider intoxication " 'where a specific intent *or mental state* is an essential element of the crime.' " (*Castillo*, *supra*, 16 Cal.4th at p. 1017, italics added by *Castillo* ["Premeditation and deliberation are clearly mental states"].) The court only linked voluntary intoxication to specific intent and did not direct the jury that it could also consider voluntary intoxication in regard to mental states. Rather, the court instructed the jury that they may "not consider evidence

12.

of voluntary intoxication for any other purpose." We agree with appellant that because the court did not expressly tell the jury they could consider voluntary intoxication for mental states, and then told the jury they may not consider voluntary intoxication for any purpose other than specific intent, the court effectively precluded the jury from being able to consider evidence of voluntary intoxication for premeditation and deliberation. By telling they jury they may not consider intoxication for any other purpose, other than specific intent, it is reasonably likely the jury misconstrued the instructions as precluding it from considering the evidence of intoxication in deciding the degree of the murder. (See *ibid*.) Therefore, we cannot conclude that "[n]o reasonable juror would understand the instructions to permit the jury to consider intoxication in determining whether defendant specifically intended to kill but to prohibit it from considering that same intoxication in determining whether he premeditated and deliberated." (See *ibid*.)

However, the instructional error was harmless under the *Watson*[2] standard of review. (See *People v. Pearson*, *supra*, 53 Cal.4th at p. 325 [applying "reasonable probability" standard of prejudice to failure to give voluntary intoxication instruction]; *People v. Mendoza* (1998) 18 Cal.4th 1114, 1134–1135 [error in voluntary intoxication instruction subject to state law standard of review]; *People v. Watson*, *supra*, 46 Cal.2d at pp. 836–837.) The jury was properly instructed on voluntary intoxication as it related to appellant's ability to form the specific intent to kill. By finding appellant guilty of attempted murder, the jury necessarily rejected any theory that appellant's intoxication prevented him from forming the specific intent to kill. We also agree with the People that the evidence of intoxication was not strong. A.R. testified that on the night of the incident appellant was maybe stoned but not drunk. The officer who arrested appellant the day of the incident and transported him to jail said appellant did not appear to be

---

[2] *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*)

13.

under the influence of drugs or alcohol.  And A.R. did not tell police appellant was under the influence on the night of the incident.

Aside from the minimal evidence of intoxication, there was also no evidence that the voluntary intoxication had any effect on appellant's mental state.  (See *People v. Williams* (1997) 16 Cal.4th 635, 677–678 [no instruction for voluntary intoxication required where evidence of intoxication was scant]; *People v. Marshall* (1996) 13 Cal.4th 799, 848 [evidence did not require requested voluntary intoxication instruction where the record did not support conclusion that at time of offense defendant was unable to premeditate or form intent to kill].)  Evidence of appellant's statement to A.R. that "I'm gonna f[**]kin' kill you bitch," followed by appellant's decision to then point his gun at A.R. and pull the trigger demonstrates appellant had the mental state to premeditate his actions.  Defense counsel himself did not even assert voluntary intoxication as a mitigating consideration to premeditation and deliberation during closing arguments.  Therefore, on this record, we cannot conclude the error in the voluntary intoxication instructions prejudiced defendant under either standard.  (See *People v. Watson*, *supra*, 46 Cal.2d at p. 837 [reasonably probable that a result more favorable would have been reached absent the error]; *Chapman v. California* (1967) 386 U.S. 18, 24 [harmless error].)  Accordingly, we reject appellant's first claim.

## II.     The Felony Conviction on Count 10 Should be Reduced to a Misdemeanor Since it was Charged as a Misdemeanor for All Purposes Under Section 17, Subdivision (b)(4).

Appellant contends that count 10 should be reduced to a misdemeanor because the prosecutor elected to charge it as a misdemeanor "for all purposes" under section 17, subdivision (b)(4).  Appellant argues the judgment should be reversed and the matter remanded to the trial court for resentencing.  The People agree that the court erred, and the felony should be reduced to a misdemeanor.  However, the People argue that remand is not necessary since count 10 is stayed and reduction of the sentence does not create

changed circumstances to trigger application of the full resentencing rule. Appellant disagrees and asserts that full resentencing is required. We modify count 10 to reflect a misdemeanor and remand for full resentencing.

### A. *Relevant Background*

In the complaint and information, appellant was charged in count 10 with corporal injury (§ 273.5, subd. (a)), filed as a misdemeanor under section 17, subdivision (b)(4). Before trial, the People filed a motion to amend count 10 to dismiss the section 17 enhancement in order to make the offense a felony. Defense counsel objected but the trial court granted the amendment and struck the enhancement. The jury convicted appellant of felony corporal injury in count 10.

### B. *Applicable Law*

Under section 17, subdivision (b)(4), "When a crime is punishable, in the discretion of the court, either by imprisonment in the state prison or imprisonment in a county jail under the provisions of subdivision (h) of Section 1170, or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances: … When the prosecuting attorney files in a court having jurisdiction over misdemeanor offenses a complaint specifying that the offense is a misdemeanor, unless the defendant at the time of arraignment or plea objects to the offense being made a misdemeanor, in which event the complaint shall be amended to charge the felony and the case shall proceed on the felony complaint."

### C. *Analysis*

Once the prosecuting attorney files a complaint specifying that the offense is a misdemeanor pursuant to section 17, subdivision (b)(4), it is a misdemeanor for all purposes unless the defendant objects. (§ 17, subd. (b)(4); *People v. Park* (2013) 56 Cal.4th 782, 789, fn. 4.) An election to treat a charged offense as a misdemeanor for all purposes means that it is binding throughout the course of the proceeding. (See *People v. Hannon* (1971) 5 Cal.3d 330, 334–335, 340.) In *Hannon*, the defendant pled

15.

guilty to two counts of statutory rape (§ 261, subd. (1)) and was committed to the Youth Authority, which classified his offenses as misdemeanors for all purposes under section 17, subdivision (b)(2). (*Hannon*, at p. 332.) After serving almost two years, the commitment was terminated pursuant to Welfare and Institutions Code section 1737.1, and the defendant was returned to trial court and sentenced to state prison. (*Hannon*, at p. 332.) The defendant argued that "the trial court did not have discretion to impose felony punishment upon him, the court having previously denominated his offense a misdemeanor when it committed him to the Youth Authority." (*Id*. at p. 333.) The court concluded that nothing in section 17, subdivision (b) indicates that classification of a crime as a misdemeanor is conditioned upon defendant's behavior or subject to defeasance for later misconduct. (*Hannon*, at pp. 334–335.)

On the other hand, in *Necochea v. Superior Court* (1972) 23 Cal.App.3d 1012, the court held that dismissal of the misdemeanor charges in the complaint did not bar a second prosecution of the charges as a felony by indictment or information. (*Id*. at pp. 1015–1016.) The court stated, "There is accordingly no relationship between first and second proceedings when the first is aborted by a dismissal, other than in the narrow sense of … section 1387. Under that section an order of dismissal is a bar to 'any other prosecution for the same offense if it is a misdemeanor, but not if it is a felony.' " (*Id*. at p. 1015.) Subsequently, the California Supreme Court in *Burris v. Superior Court* (2005) 34 Cal.4th 1012 (*Burris*) affirmed that the dismissal of a misdemeanor complaint did not bar further prosecution for a felony charge based on the same conduct. (*Id*. at p. 1015.)

Here, unlike *Burris* or *Necochea* where the prosecutor moved to dismiss the complaint and refile the charges as felonies in a separate complaint, the prosecutor moved to strike the section 17, subdivision (b) enhancement within the same proceedings in order to go to trial on a felony charge. However, once the prosecutor elected to charge the offense as a misdemeanor under section 17, subdivision (b)(4), it became a misdemeanor for all purposes for the entirety of the proceedings. (See *People v. Hannon*,

16.

*supra*, 5 Cal.3d at pp. 334–335 [misdemeanor designation is binding throughout the course of the proceeding].)  As such, the trial court erred when it granted the prosecutor's motion striking the section 17, subdivision (b) enhancement as to count 10 and allowing that count to proceed to trial as a felony offense.  And we order count 10 reduced to a misdemeanor.

The remaining issue is whether we should remand to the lower court for full resentencing.  "[W]hen part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.' " (*People v. Buycks* (2018) 5 Cal.5th 857, 893; *People v. Valenzuela* (2019) 7 Cal.5th 415, 424–425 ["[T]he full resentencing rule allows a trial court to revisit all prior sentencing decisions when resentencing a defendant"].)  Even when only a single " 'subordinate count[] of a felony conviction' " is reversed, " 'the trial court has jurisdiction to modify every aspect of the defendant's sentence on the counts that were affirmed, including the term imposed as the principal term.' " (*Buycks,* at p. 893.)  The People's argument that full resentencing does not apply to stayed terms because they would have no practical effect is unsupported by their cited authority, *People v. Barnum* (2003) 29 Cal.4th 1210, 1217.  We note that even though the sentence on count 10 is stayed, the trial court must still exercise its discretion in imposing a new misdemeanor sentence for count 10.  As such, remand for full resentencing is appropriate. (*Buycks,* at p. 893.)

Therefore, we order count 10 modified to a misdemeanor and remand the matter to the trial court for a full resentencing as to all counts.

### III.    Trial Court's Upper Term Sentence Violates the Sixth Amendment and Does Not Comply with Section 1170, Subdivision (b)

Appellant contends the trial court's reliance on aggravating circumstances to increase his punishment beyond the middle term for counts 2 through 8 and 10 and the firearm enhancements attached to counts 1, 2, 3 and 7 were based on facts not proven

beyond reasonable doubt, which violated his Sixth Amendment right to a jury trial. Appellant contends the error was prejudicial and the sentence should be reversed, and the matter remanded for a new sentencing hearing. The People claim appellant forfeited this claim because he did not object to the imposition of the upper term at sentencing. Appellant contends there can be no forfeiture when an express waiver is required. The People also contend that any error was harmless. We conclude the court's imposition of the upper terms was unauthorized and remand for resentencing.

### A. *Relevant Background*

The sentencing hearing was on June 29, 2022. The court was aware of the changes in section 1170, subdivision (b) and had reviewed a sentencing brief from the People based on the Legislature's changes. The sentencing brief explained that the court could rely on the following aggravating factors: that the crime involved great violence or bodily harm, under California Rules of Court, rule 4.421(a)(1), which was based on appellant's attempted murder conviction; andt that appellant was armed with a firearm, under California Rules of Court, rule 4.421(a)(2), which was proven true by the jury. And although the People stated in the sentencing brief that they would be prepared to provide a certified record of conviction for appellant, there is nothing in the record indicating that one was provided by the People at sentencing. At sentencing, the defense counsel submitted on the probation report but stated, "[W]e believe that [appellant] should be sentenced to the midterm of any determinate sentencing charges .…"

The court considered the sentencing brief and the probation report, adopted one circumstance in mitigation that appellant was under the age of 26 years old and found four factors in aggravation. The court identified the following four aggravating circumstances: (1) "[appellant's] prior sustained petitions in juvenile delinquency proceeding[s] and prior convictions are numerous and of increasing seriousness"; (2) he "served a prior commitment, pursuant to … [section] 1170(h)(5)"; (3) his "prior performance in juvenile and felony probation [was not] satisfactory in that he violated the

18.

terms and re-offended"; and (4) he "has engaged in violent conduct which indicates a serious danger to society based on the current offense."

The trial court relied on all four aggravating circumstances when it sentenced appellant to the upper term for all determinate crimes, base terms, and enhancements with a triad. The court explained, "In this case, the [appellant's] first three cited aggravating factors were related solely to recidivist behavior as shown by his record of conviction. People have not pled or proven the aggravating factors, which was not required at the time of the initial sentencing hearing. [¶] Penal Code's 1170(b) change has been deemed retroactive by the higher court, thus the [appellant's] aggravating factors can be considered for the upper term as to the base crimes, but not for the enhancements to the triad. [¶] The fourth factor is supported by the record of conviction and for the crimes which the [appellant] was convicted in this case and will be considered for all purposes. However, only the portion that has been pled and proven will be considered. That's [e]nhancement [f]our."

Later, the trial court stated, "After review of the factors in aggravation versus one in mitigation, the upper term will be imposed for all determinate crimes, base terms, enhancements with a triad." The court then imposed the upper term of six years on count 8, plus imposed and stayed the upper term on counts 2 through 7 and count 10, as well as on the firearm enhancements attached to counts 1, 2, 3 and 7.

**B.** *Standard of Review and Applicable Law*

On appeal, an issue that presents a question of law is reviewed de novo. (*People v. Lewis* (2021) 11 Cal.5th 952, 961 [statutory interpretation]; *People v. Prunty* (2015) 62 Cal.4th 59, 71.)

Under the former version of section 1170, subdivision (b), when a judgment of imprisonment was to be imposed, and the statute specified three possible terms (lower, middle, and upper), the trial court had broad discretion to select the term that best served the interests of justice and was required to specify the reasons for its sentencing decision.

19.

(§ 1170, former subd. (b); Cal. Rules of Court, former rule 4.420(e); *People v. Sandoval* (2007) 41 Cal.4th 825, 846–847.) In making its selection, the trial court could consider the circumstances in aggravation or mitigation (as defined by rules 4.421 & 4.423) "and any other factor reasonably related to the sentencing decision." (Former rule 4.420(d).) The court could rely on "the case record, the probation officer's report, other reports and statements properly received, statements in aggravation or mitigation, and any evidence introduced at the sentencing hearing." (*Ibid.*)

Effective January 1, 2022, section 1170, subdivision (b) was amended by Senate Bill No. 567 to create a "presumption of sentencing judgment not to exceed the middle terms." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 567 (2021–2022 Reg. Sess.) as amended May 20, 2021, p. 3.) As amended, a trial court may only impose an upper term when the facts underlying the aggravating circumstances have been stipulated to by the defendant or found true beyond a reasonable doubt by the jury or the court acting as the fact finder. (§ 1170, subd. (b)(2); *People v. Dunn* (2022) 81 Cal.App.5th 394, 402, review granted Oct. 12, 2022, S275655; *People v. Lewis* (2023) 88 Cal.App.5th 1125, 1131, review granted May 17, 2023, S279147.) Under section 1170, subdivision (b)(3), the trial court "may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3); *Dunn*, at p. 402.)

### C. *Analysis*

Appellant argues that the court's imposition of the upper term violates his Sixth Amendment jury trial right by using facts not found true beyond a reasonable doubt to increase his maximum sentence. Appellant contends the error was prejudicial and the sentence should be reversed, and the matter remanded for a new sentencing hearing. The People claim appellant forfeited this claim because he did not object to the imposition of the upper term at sentencing. Appellant contends there can be no forfeiture when an

express waiver under the Sixth Amendment is required. The People agree that the court relied on aggravating circumstances that were neither admitted by the appellant nor proven true beyond a reasonable doubt but contend any error was harmless. In his reply, appellant asserts that if the matter were remanded for full resentencing based on his second claim regarding count 10, this claim would be rendered moot.

Appellant was sentenced on June 29, 2022, which was after the changes to section 1170, subdivision (b) took effect. The record shows all parties were aware of the changes in the law and the court's newly limited discretion, which was discussed at sentencing. Although defendant did not object to the trial court's imposition of the upper term, the People were aware of the changes in the law and prepared a sentencing brief for the court, and the court was also aware of the changes in the law. Therefore, the purpose for requiring an objection so that the issue could be raised and considered was served in this case. (See *People v. Williams* (1988) 44 Cal.3d 883, 906; *People v. Partida* (2005) 37 Cal.4th 428, 435 ["A party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct"]; see *Partida*, at p. 434 ["to further these purposes, the requirement must be interpreted reasonably, not formalistically"].)

Further, claims regarding an unauthorized sentence can be raised at any time. (*People v. Scott* (1994) 9 Cal.4th 331, 354.) "[A] sentence is generally 'unauthorized' where it could not lawfully be imposed under any circumstance in the particular case." (*Ibid.*; *People v. Brach* (2002) 95 Cal.App.4th 571, 578 [sentence " 'could not lawfully be imposed under any circumstance in the particular case,' for example, 'where the court violates mandatory provisions governing the length of confinement' "].) Here, defendant claims that the imposition of the upper term violates his Sixth Amendment right and fails to comply with section 1170, subdivision (b), which would render his sentence unauthorized. Therefore, defendant's claim is not forfeited.

As amended, section 1170, subdivision (b)(2) provides that in order "to increase the punishment beyond this middle term maximum, a trial court must now rely on

21.

separate aggravating-circumstance findings that it concludes justify upward departure from the presumptive maximum middle term." (*People v. Falcon* (2023) 92 Cal.App.5th 911, 933, review granted Sept. 13, 2023, S281242 (*Falcon*).) As such, "Sixth Amendment jury-trial-right principles attach to all facts legally essential to imposing an increased sentence" beyond the middle term maximum. (*Ibid.*; *Blakely v. Washington* (2004) 542 U.S. 296, 313 [the constitutional requirement of a jury trial and proof beyond a reasonable doubt applies to a fact that is "legally essential to the punishment"] (*Blakely*).) We note amended section 1170, subdivision (b)(2) "incorporates this jury trial right by requiring that all aggravating circumstance findings relied on to impose a sentence beyond the middle term be found true by a jury beyond a reasonable doubt." (*Falcon*, at p. 933; *Blakely*, at p. 313.) The statute creates two types of exclusions from this constitutional jury trial right: aggravating facts stipulated to by the defendant may be considered without a jury finding (§ 1170, subd. (b)(2); *Falcon*, at p. 933; see *Blakely*, at p. 303 [facts admitted by the defendant excepted]) and the sentencing court may also consider prior convictions based on certified records of conviction (§ 1170, subd. (b)(3); *Falcon*, at p. 933; see *People v. Sallee* (2023) 88 Cal.App.5th 330, 337, review granted Apr. 26, 2023, S278690; *People v. Flowers* (2022) 81 Cal.App.5th 680, 685, review granted Oct. 12, 2022, S276237; *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 [fact of a prior conviction excepted] (*Apprendi*).)

Upon review of the record, it shows that the aggravating factors relied upon by the trial court were neither stipulated to by the appellant nor found true beyond a reasonable doubt by a jury or judge in a court trial. While the record shows appellant stipulated to a prior felony conviction, no other information regarding the conviction was given. As such, it alone does not support either of the aggravating circumstances relied on by the court. Nor does the record demonstrate the aggravating circumstances were in some way supported by a certified record of conviction. While the court relied on the probation report in assessing appellant's criminal record, a probation report is not a certified record

22.

of conviction and cannot be used to support imposition of the upper term under section 1170, subdivision (b)(3). (*People v. Dunn, supra,* 81 Cal.App.5th at p. 401, review granted [probation report is not a certified record of conviction].) Thus, the trial court's findings on the aggravating factors rest on facts that have not been submitted to a jury or proved beyond a reasonable doubt, violating the Sixth Amendment. (See *Falcon*, *supra*, 92 Cal.App.5th at p. 933, review granted [all aggravating circumstance findings relied on to impose a sentence beyond the middle term must be found true by a jury beyond a reasonable doubt]; *Blakely*, *supra*, 542 U.S. 296 at p. 313.)

We also note that the fourth factor in aggravation, that appellant "engaged in violent conduct which indicates a serious danger to society based on the current offense," cannot be based in part on the current convictions on the charged offenses and enhancements. "[Any] fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi*, *supra*, 530 U.S. at p. 490.) Here, the trial court violated the Sixth Amendment by relying on the current convictions to impose punishment exceeding the middle term sentences authorized by those convictions. (*Apprendi*, at p. 483, fn. omitted [explaining that a jury must find any fact that "exposes the criminal defendant to a penalty *exceeding* the maximum he would receive if punished according to the facts reflected in the jury verdict alone"].) The jury's verdicts authorized no more than middle terms. (See §§ 1170, subd. (b)(1)–(3), 1170.1, subd. (d)(1)–(2).) As such, the trial court erred when it imposed the upper terms based on facts that were not proven true beyond a reasonable doubt by a trier of fact. (See § 1170, subd. (b)(2).)

Here, defendant was sentenced after the changes to section 1170, subdivision (b) took effect and the trial court's error created an unauthorized sentence. (*People v. Smith* (2001) 24 Cal.4th 849, 852 [an unauthorized sentence is one that " 'could not lawfully be imposed under any circumstance in the particular case' "].) We reject the People's argument that the error was harmless since defendant's sentence is unauthorized and not

subject to harmless error review.  (See *ibid.* [unauthorized sentence cannot be lawfully imposed]; *In re Birdwell* (1996) 50 Cal.App.4th 926, 930 [unauthorized sentence not subject to harmless error review].)  The People's reliance on *Dunn*, *People v. Zabelle* (2022) 80 Cal.App.5th 1098 and *People v. Berdoll* (2022) 85 Cal.App.5th 159 are readily distinguishable in that they address retroactive application of the changes to section 1170, subdivision (b) and whether the resulting sentencing error was harmless.  Consequently, we vacate the sentence and remand for resentencing in accordance with section 1170, subdivision (b).**[3]**

## DISPOSITION

We vacate the sentence, order count 10 modified to reflect a misdemeanor conviction and remand for full resentencing in accordance with this opinion.  In all other respects, the judgment is affirmed.

POOCHIGIAN, J.

WE CONCUR:

LEVY, Acting P. J.

DE SANTOS, J.

---

**[3]** We reject appellant's claim that double jeopardy bars the court from considering the recidivist-related aggravating circumstances at resentencing.  Appellant's reliance on *People v. Seel* (2004) 34 Cal.4th 535 is misguided as the *Seel* court held the double jeopardy clause barred retrial of a prior conviction allegation after an appellate finding of evidentiary insufficiency.  (*Id.* at p. 541.)

24.