Filed 3/4/24  P. v. Alvarez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F085324 |
| Plaintiff and Respondent, | (Super. Ct. No. CF98623957) |
| v. | |
| MARK ANTHONY ALVAREZ, | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

### THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  Jonathan M. Skiles, Judge.

J. Edward Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Hill, P. J., Poochigian, J. and Detjen, J.

## INTRODUCTION

Appellant and defendant Mark Anthony Alvarez (appellant Alvarez) was the driver of a car when the passenger performed a drive-by shooting; one person was killed and two others were wounded.  In 1999, after a jury trial, Alvarez was convicted of one count of first degree murder with the drive-by murder special circumstance (Pen. Code,[1] § 190.2, subd. (a)(21)); and two counts of premeditated attempted murder.  He was sentenced to life in prison without the possibility of parole for first degree murder with the special circumstance, plus additional life terms for the premeditated attempted murder convictions.

In 2022, Alvarez filed a petition for resentencing of his convictions pursuant to section 1172.6.  The trial court issued an order to show cause, conducted an evidentiary hearing, and denied the petition.

On appeal, appellate counsel filed a brief which summarized the facts and procedural history with citations to the record, raised no issues, and asked this court to independently review the record pursuant to both *People v. Delgadillo* (2022) 14 Cal.5th 216 and *People v. Wende* (1979) 25 Cal.3d 436.  Alvarez submitted a letter brief.  We will address his contentions and affirm the trial court's denial of his petition.

## FACTS[2]

"Shortly before midnight on May 24, 1997, Matthew Vargas got into a fight with three other young men outside a liquor store in Fresno.  They beat him up and stole his beer….

---

[1]     All further statutory citations are to the Penal Code unless otherwise indicated.

[2]     The following facts are from this court's nonpublished opinion in *People v. Alvarez* (Feb. 6, 2002, F033867) (*Alvarez*), which affirmed the judgment in Alvarez's direct appeal.  The prosecution filed the opinion as an exhibit in opposition to Alvarez's petition, without objection. In addition, after notice to the parties and without objection, this court takes judicial notice of the entirety of the record in Alvarez's direct appeal.  (Evid. Code, §§ 450, 452, subd. (d), 459; *In re W.R.* (2018) 22 Cal.App.5th 284, 286–287, fn. 2.)

As explained in issue II below, the parties did not object to the trial court's reliance on this factual summary at the evidentiary hearing on Alvarez's section 1172.6 petition.

"Vargas walked home and called his friend [appellant] Mark Alvarez …. He told Alvarez what had happened, and asked him to come over right away. He also asked Alvarez to bring the gun he (Alvarez) was keeping at his house for Vargas. It was a semi-automatic .22-caliber rifle with a sawed-off stock. It had a tubular magazine beneath the barrel capable of holding 14 bullets, and a spring-loaded knob on the side that cocked the gun when pulled all the way back. The rifle was loaded when Alvarez left the house.

"Alvarez put the rifle on the floor of the car just behind the front seats. This was a departure from his usual practice of carrying it in the trunk. Alvarez picked up Vargas at his house, and the two of them then drove around the neighborhood for about 20 minutes looking for Vargas's three assailants. They could not find them and so returned to Vargas's house, where they remained for the next two hours drinking beer and smoking marijuana.

"At about 2:30 in the morning, Alvarez and Vargas drove to the home of another of Vargas's friends, [R.M.]. Alvarez waited in the car while Vargas went around to the back of the house and awoke [R.M.] by knocking on his bedroom window. He asked [R.M.] to go with him and Alvarez to find the three guys who had jumped him. [R.M.] refused and went back to sleep. He would later testify Vargas was still very mad about the incident when he saw him that night, and intoxicated to the point his speech was slurred and his walk unsteady.

"Alvarez and Vargas again drove around the neighborhood looking for Vargas's three assailants.

"It was not long before they found them. Since beating up Vargas and drinking his beer, the three young men had continued to wander the streets causing trouble. They had, among other things, assaulted another person and broken into a parked car. They were walking three abreast down the center of the street when one noticed a car behind them, with its headlights off, driving slowly in the opposite direction. The car drove out of

3.

sight, but reappeared a few minutes later at a stop sign in front of them. It was stopped there, with its headlights on. Then the car started driving slowly toward them and switched on its high beams. When it reached the three men, the passenger, Vargas, leaned out the window and opened fire. He continued to shoot as the three men fled. The car stopped briefly as Vargas fired one more shot, making 10 shots altogether, and then drove off.

"One of the three men—the one who had picked the fight earlier with Vargas—was shot three times and killed by a bullet that passed through his heart. The other two were wounded, one seriously.

"Vargas was arrested shortly after the shooting. He was tried and convicted of murder and attempted murder in March of 1998. Alvarez remained free until his arrest in September of 1998. The details of the investigation that led to his arrest are not pertinent here because, as we will explain below, Alvarez subsequently acknowledged he was the person driving the car when the shooting occurred.

"Prior to Alvarez's arrest, [L.M.], his girlfriend at the time of the shootings, told police Alvarez had been at home with her all that night. After his arrest, she said this was not true, and that Alvarez had in fact confessed to her his part in the shooting. One day soon afterward, she received several phone calls from Alvarez in jail in which he allegedly threatened to kill her…. [T]he trial court later admitted evidence Alvarez had committed various acts of violence in the past against [L.M.] and others…."

**Defense**

"Alvarez testified at trial in his own defense. He acknowledged the shootings had occurred in much the manner described above, although with certain variations tending to show he was not aware Vargas would shoot the victims and so did not intend to aid and abet a drive-by shooting. He testified, for example, that Vargas said he only wanted to fight his three assailants 'one-on-one'; that he and Vargas saw the three men just once that night and only then by chance on their way back to Vargas's house from [R.M.'s];

4.

that he forgot all about the gun behind the seats; that he switched on his high beams simply so the three men would move out of the way; that he was 'completely surprised' when Vargas started shooting; that he tried to restrain Vargas; and that he did not stop the car at the scene."

## PROCEDURAL BACKGROUND

On March 25, 1999, a first amended information was filed in the Superior Court of Fresno County charging Alvarez with count 1, first degree premeditated murder of Oscar Garcia (§ 187), with a firearm enhancement. A special circumstance was alleged that the murder was intentional and perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person and persons outside the vehicle and with the intent to inflict death (§ 190.2, subd. (a)(21)). In count 2, he was charged with second degree murder of Garcia as an alternate charge to count 1.

In counts 3 and 4, Alvarez was charged with the premeditated attempted murders of, respectively, A.T. and H.H. (§§ 664/187), with firearm enhancements; and count 5, dissuading a witness, L.M., by force or threat (§ 136.1, subd. (c)(1)), with prior conviction allegations.

### Trial and Instructions

On June 8, 1999, Alvarez's jury trial began.

#### *Principals and Aiding and Abetting*

As will be addressed below, the jury was instructed with aiding and abetting instructions as to both murder and attempted murder. CALJIC No. 3.01 defined direct aiding and abetting: that a person aids and abets the commission or attempted commission of a crime when he or she, with knowledge of the unlawful purpose of the perpetrator, with the intent or purpose of committing or encouraging or facilitating the commission of the crime, and by act or advice aids, promotes, encourages, or instigates the commission of the crime.

The jury also received CALJIC No. 3.02, aiding and abetting based on the natural and probable consequences doctrine: "One who aids and abets another in the commission of a crime or crimes is not only guilty of those crimes, but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crimes originally aided and abetted," that the crime or crimes of permitting shooting from a vehicle or shooting from a vehicle at a person was or were committed, defendant aided and abetted the commission of those crimes, a co-principal in those crimes committed the crimes of murder and attempted murder, and the crimes of first or second degree murder and attempted murder, "were a natural and probable consequence of the commission of the crimes of shooting from vehicle at person, permitting shooting from vehicle, or shooting from vehicle."

### *Murder and Attempted Murder*

The jury was instructed with CALJIC No. 8.10, the elements of murder, and CALJIC No. 8.11, express and implied malice. CALJIC No. 8.20 defined premeditation and deliberation and stated all murder perpetrated by any kind of willful, deliberate, and premeditated killing "with express malice aforethought" is murder of the first degree.

The jury was instructed on the difference between first and second degree murder. "Murder which is perpetrated by means of discharging a firearm from a motor vehicle intentionally at another person outside of the vehicle when the perpetrator specifically intended to inflict death is murder of [the] first degree."

The jury was further instructed with CALJIC No. 8.66, the elements of attempted murder, and CALJIC No. 8.67, premeditation and deliberation for attempted murder.

### *The Special Circumstance*

The trial court gave several instructions on the drive-by murder special circumstance. CALJIC No. 8.25.1 stated that a murder perpetuated "by means of discharging a firearm from a motor vehicle intentionally at another person outside of the

6.

vehicle when *the perpetrator* specifically intended to inflict death, is murder of the first degree." (Italics added.)

CALJIC No. 8.80.1 further defined the special circumstance:

"If you find the defendant in this case *guilty of murder of the first degree*, you must then determine if the following special circumstance is true or not true: That the murder was intentional and perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person or persons outside the vehicle and with the intent to inflict death.

"The People have the burden of proving the truth of a special circumstance. If you have a reasonable doubt as to whether a special circumstance is true, you must find it to be not true.

"*If you find that a defendant was not the actual killer of a human being*, you cannot find the special circumstance to be true unless you are satisfied beyond a reasonable doubt that *such defendant with the intent to kill aided, abetted, counseled, commanded, induced, solicited, requested, or assisted any actor in the commission of the murder in the first degree*."

CALJIC No. 8.81.21 stated:

"To find that the special circumstance, referred to in these instructions as murder by means of an intentional discharge of a firearm from a motor vehicle, is true, it must be proved:

"One, [t]he murder was perpetrated by means of discharging a firearm from a motor vehicle;

"Two, [t]he perpetrator intentionally discharged a firearm at [an]other person or persons outside the vehicle; and

"Three, *the perpetrator*, at the time that he discharged the firearm, *intended to inflict death*." (Italics added.)

CALJIC No. 8.83.1 stated:

"The specific intent with which an act is done may be shown by the circumstances surrounding its commission. But you may not find a special circumstance alleged in this case to be true unless the proved surrounding circumstances are not only, (1), consistent with the theory that the defendant had the required specific intent, but (2), cannot be reconciled with any other rational conclusion."

7.

**Verdict and Sentence**

On July 9, 1999, the jury found Alvarez guilty of count 1, first degree murder, and found true the drive-by murder special circumstance (§ 190.2, subd. (a)(21)). He was also convicted of counts 3 and 4, the premeditated attempted murders. As to these three convictions, the jury found true the attached enhancements that he was armed with a firearm (§ 12022, subd. (a)(1)).

Alvarez was found not guilty of count 5, attempting to dissuade a witness by force or threat of force, and the jury did not return a verdict on the alternate charge in count 2, second degree murder. In a bifurcated trial, the jury found true the allegations that Alvarez had a prior strike conviction, a prior serious felony conviction enhancement (§ 667, subd. (a)), and a prior prison term enhancement (§ 667.5, subd. (b)).

On August 9, 1999, "[t]he court sentenced Alvarez for the murder to an indeterminate life term without the possibility of parole, to be served following the six-year determinate term it imposed for the prior serious felony conviction and arming enhancements to that count. It stayed the prior prison term enhancement. As for the two [premeditated] attempted murder counts, the court sentenced Alvarez to consecutive life terms with the possibility of parole, doubled them under the three strikes law, and stayed execution of the enhancements. Thus, Alvarez was ordered to serve, consecutively, a six-year determinate term, a life term without the possibility of parole, and four life terms with the possibility of parole." (*Alvarez*, *supra*, F033867.)

**Direct Appeal**

On February 6, 2002, this court filed the nonpublished opinion in *Alvarez*, *supra*, F033867, which affirmed the judgment in Alvarez's direct appeal. This court rejected Alvarez's arguments that the trial court made erroneous rulings regarding jury selection and the admission of his prior acts of violence. This court also held his convictions for first degree premeditated murder and premeditated attempted murder were supported by substantial evidence.

8.

## PETITION FOR RESENTENCING

On July 11, 2022, Alvarez filed, in propria persona, a petition for resentencing pursuant to section 1172.6 and requested appointment of counsel. His supporting declaration consisted of a preprinted form where he checked boxes that stated, as relevant to this case, that he was convicted of murder, attempted murder, or manslaughter following a trial, and he could not presently be convicted of murder or attempted murder because of changes made to sections 188 and 189, effective January 1, 2019. The court appointed counsel.

## The Prosecution's Opposition

The prosecution filed opposition, and attached this court's nonpublished opinion from Alvarez's direct appeal as an exhibit. (*Alvarez*, *supra*, F033867.) The prosecution conceded the jury was instructed on the natural and probable consequences doctrine, but argued Alvarez's petition should not be granted because the jury specifically found Alvarez had the intent to kill based on their findings on the drive-by murder special circumstance.

## THE TRIAL COURT'S EVIDENTIARY HEARING

The trial court issued an order to show cause, and held an evidentiary hearing on Alvarez's petition on November 7, 2022. Alvarez appeared by videoconference and waived his personal appearance. The prosecutor and defense counsel were present at the hearing.

Defense counsel argued CALJIC No. 8.25.1 only required the jury to find the perpetrator had the intent to kill, and the instructions did not clearly define the perpetrator's identity. The court said that CALJIC No. 8.80.1 required the jury to find beyond a reasonable doubt that Alvarez, who was not the perpetrator, had the intent to kill.

The prosecutor asked the court to rule on Alvarez's petition based on both the jury instructions and this court's prior opinion that affirmed his convictions. He argued this

court's prior opinion found the intent to kill was an element of the drive-by murder special circumstance and the evidence supported the jury's finding that Alvarez acted with that intent.

The court asked the parties if they were ready to submit the matter or wanted to file additional briefs. Defense counsel stated the issue had been sufficiently briefed and the parties differed on the merits.

Alvarez personally addressed the court, and stated that CALJIC No. 8.81.21 only required the jury to find the perpetrator who fired the weapon acted with intent to kill, and "[t]hat is not me," because he was not the gunman. The court replied that CALJIC No. 8.80.1 defined the drive-by murder special circumstance, and stated that if the jury found Alvarez was not the actual killer, it could not find the special circumstance true "unless you are satisfied beyond a reasonable doubt that such defendant with an intent to kill aided, abetted, counseled, commanded[,] induced, solicited, requested or assisted any act during the commission of the murder in the first degree. [¶] The jury was given that instruction and they returned a true finding on that special circumstance." The court noted that in Alvarez's direct appeal, the appellate court similarly found the jury could not have found the special circumstance true "unless they found that you had an intent to kill."

Alvarez replied the prosecution never proved his intent to kill, he never wanted anyone to be shot or killed that day, and the jury must have relied on the natural and probable consequences doctrine to convict him of first degree murder. The court disagreed because if he was not the shooter, the jury had to find Alvarez personally had the intent to kill to find the special circumstance true.

**The Trial Court's Ruling**

At the conclusion of the evidentiary hearing, the court found Alvarez was ineligible for resentencing and stated its intended decision:

10.

"The issue before the Court is whether the Court can find beyond a reasonable doubt that the defendant is guilty of murder, not withstanding [*sic*] the amendments to sections 188 and 189. The Court does find that the jury, specifically in jury instruction [CALJIC No.] 8.80.1, returned … a true finding on that special circumstance that it required the jury to find that the defendant acted with an intent to kill. And they made that finding with the beyond a reasonable doubt standard. That is consistent with the language from the Court of Appeal also finding that it was entirely reasonable for the jury to find that the defendant acted with an intent to kill. So the Court finds that beyond a reasonable doubt that the defendant could still be found guilty of murder, not withstanding [*sic*] the amendments to sections 188 and 189.…"

The court asked the parties if they wanted to place anything on the record. Both parties submitted the matter; defense counsel said he had nothing to add. Neither party objected to the court's reliance on the nonpublished opinion from Alvarez's direct appeal to deny the petition.

**The Trial Court's Order**

Also on November 7, 2022, the court filed an order denying relief after the evidentiary hearing. The court's order stated it had issued an order to show cause and conducted an evidentiary hearing on Alvarez's petition, and the parties submitted the matter based on the petition, the prosecution's opposition, and the arguments from both counsel and Alvarez, and no additional evidence was submitted. The court further stated that it agreed with and adopted the factual statement from this court's nonpublished opinion that affirmed Alvarez's convictions on direct appeal.

The court stated that based on the facts of the case and the jury's findings, it found beyond a reasonable doubt that Alvarez was guilty of one count of first degree murder and two counts of premeditated attempted murder "notwithstanding the amendments to … sections 188 and 189," and he was ineligible for resentencing.

"The jury's true finding as to the drive-by special circumstance, including the necessary finding … Alvarez had a specific intent to kill, was supported by the evidence. … Alvarez provided the killer with the gun, drove the killer around the area looking for the men who previously assaulted the killer, illuminated the victims with his vehicle's high beams

11.

when they were found, and drove up to the victims as the killer opened fire, even stopping to allow the final shot to be fired. This court finds beyond a reasonable doubt … Alvarez's actions demonstrated his own specific intent to kill."

The court also found Alvarez was ineligible for resentencing for his premeditated attempted murder convictions for similar reasons.

"[A]ll three victims, including the two who survived, were shot as part of the same drive-by shooting. This court finds beyond a reasonable doubt the same intent to kill … Alvarez demonstrated toward the victim of the murder also was present as to the two surviving victims. The intent was identical. The only difference is two of the three victims were lucky enough to survive being shot."

Alvarez filed a timely notice of appeal from the trial court's denial of his petition.

## DISCUSSION

As explained above, appellate counsel filed a brief with this court pursuant to *Wende* and *Delgadillo*. In response to this court's order, Alvarez filed a letter brief raising two issues about the denial of his petition after the evidentiary hearing: (1) the trial court improperly relied on the factual statement in the prior appellate opinion, and (2) the court's denial of the petition and reliance on the special circumstance instructions must be reversed based on *In re Lopez* (2023) 14 Cal.5th 562 (*Lopez*).

## I. Section 1172.6.

We begin with the applicable statutes. "Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) [Senate Bill 1437] amended the felony-murder rule by adding section 189, subdivision (e). [Citation.] It provides that a participant in the qualifying felony is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life. [Citation.] The Legislature also amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that '[m]alice shall not be imputed to a person based solely on his or her participation in a

12.

crime.' " (*People v. Harden* (2022) 81 Cal.App.5th 45, 50–51 (*Harden*); *People v. Strong* (2022) 13 Cal.5th 698, 707–708.)

"Senate Bill 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended," initially codified in former section 1170.95. (*People v. Strong*, *supra*, 13 Cal.5th at p. 708; *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).) The initial version of former section 1170.95 permitted "a person with an existing conviction for felony murder or murder under the natural and probable consequences doctrine to petition the sentencing court to have the murder conviction vacated and to be resentenced on any remaining counts if he or she could not have been convicted of murder as a result of the other legislative changes implemented by Senate Bill … 1437." (*People v. Flores* (2020) 44 Cal.App.5th 985, 992.)

Effective January 1, 2022, Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775) made substantive amendments to former section 1170.95, to authorize petitions for resentencing of attempted murder and manslaughter convictions under certain circumstances, and also set forth procedures for the prima facie and evidentiary hearing showings. (*People v. Birdsall* (2022) 77 Cal.App.5th 859, 865, fn. 18; *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 388.) On June 30, 2022, the statute was renumbered as section 1172.6 without further substantive changes. (*People v. Saibu* (2022) 81 Cal.App.5th 709, 715, fn. 3.)

"After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1172.6, subd. (c).) The jury instructions are part of the record of conviction and may be reviewed

13.

to make the prima facie determination.  (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251–1252; *People v. Offley* (2020) 48 Cal.App.5th 588, 599.)

The trial court's failure to comply with the statutory requirements of section 1172.6 is not prejudicial unless there is a reasonable probability that in the absence of the error, the petitioner would have obtained a more favorable result.  (*Lewis*, *supra*, 11 Cal.5th at p. 974; *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).)

### ***The Evidentiary Hearing***

"Once a petitioner establishes a prima facie case for relief and the superior court issues an order to show cause, the matter proceeds to an evidentiary hearing at which it is the prosecution's burden to prove beyond a reasonable doubt that the petitioner is ineligible for resentencing.  [Citations.]  If the superior court finds beyond a reasonable doubt that the petitioner is guilty of murder [or attempted murder] notwithstanding the amendments to sections 188 and 189, the petitioner is ineligible for relief under section 1172.6."  (*People v. Vargas* (2022) 84 Cal.App.5th 943, 951 (*Vargas*).)

"At the hearing to determine whether the petitioner is entitled to relief, … [t]he admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed.  The court may also consider the procedural history of the case recited in any prior appellate opinion.  However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule.  The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens.  A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.  If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and

enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1172.6, subd. (d)(3).)

At the evidentiary hearing, the trial court may make factual findings and credibility determinations, and weigh evidence. (*Harden*, *supra*, 81 Cal.App.5th at p. 51.) "Although the parties may offer new or additional evidence to meet their respective burdens, section 1172.6, subdivision (d)(3) does not contemplate a whole new trial on all the elements of murder. [Citation.] Rather, '[t]he retroactive relief provided by [section 1172.6] is a legislative "act of lenity" intended to give defendants serving otherwise final sentences the benefit of ameliorative changes to applicable criminal laws and does not result in a new trial or increased punishment.' [Citations.] Thus, the focus at the evidentiary hearing phase of an 1172.6 petition is 'on evidence made relevant by the amendments to the substantive definition of murder,' which, in the context of section 188, requires 'the prosecution to prove that all principals to a murder [or attempted murder] acted with malice aforethought.' " (*Vargas*, *supra*, 84 Cal.App.5th at p. 952.)

### ***Review of the Trial Court's Ruling***

"While the superior court acts as an independent fact finder in determining whether the People have met their burden, on appeal, the reviewing court applies the substantial evidence standard to the superior court's findings. [Citation.] Under this familiar standard, ' "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.] We determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.] In so doing, a reviewing court "presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." '

[Citations.] Substantial evidence also ' "includes circumstantial evidence and any reasonable inferences drawn from that evidence." ' " (*Vargas*, *supra*, 84 Cal.App.5th at p. 951; *People v. Mitchell* (2022) 81 Cal.App.5th 575, 591.)

## II. The Trial Court's Reliance on the Prior Appellate Opinion

In his letter brief, Alvarez asserts the trial court erroneously denied his petition at the evidentiary hearing by relying on the factual statement in this court's appellate opinion that affirmed his conviction on direct appeal, in violation of *People v. Clements* (2022) 75 Cal.App.5th 276.

## A. Section 1172.6, Subdivision (d)(3)

Section 1172.6, subdivision (d)(3) states that at the evidentiary hearing, the court may consider "the procedural history of the case recited in any prior appellate opinion." (§ 1172.6, subd. (d)(3); *People v. Davenport* (2023) 95 Cal.App.5th 1150, 1159.) This language has been interpreted to "prevent[ ] a trial court from relying on facts recited in an appellate opinion …." (*People v. Cooper* (2022) 77 Cal.App.5th 393, 400, fn. 9.) "[T]he factual summary in an appellate opinion is not evidence that may be considered at an evidentiary hearing to determine a petitioner's eligibility for resentencing." (*People v. Flores* (2022) 76 Cal.App.5th 974, 988; *People v. Clements*, *supra*, 75 Cal.App.5th at p. 292.) It has further been held, however, that a court may rely on an opinion's factual summary with the petitioner's acquiescence. (*Cooper*, at p. 400, fn. 9.)

This issue was recently addressed in *People v. Vance* (2023) 94 Cal.App.5th 706 (*Vance*). In that case, the defendant was convicted of first degree murder on a felony-murder theory. He filed a section 1172.6 petition for resentencing, and the trial court issued an order to show cause and conducted an evidentiary hearing. (*Id.* at pp. 710–711.) At the hearing, the prosecution requested judicial notice of the record in the underlying case. The trial court denied the petition and stated: " 'The opinion of the Court of Appeal affirming the original conviction sets forth a detailed factual account of

16.

the evidence presented at trial. The Court relies on the factual summary in that opinion for analysis of this [section 1172.6] petition.' " (*Id*. at p. 711, & fn. 2.)

*Vance* acknowledged that section 1172.6, subdivision (d)(3) prohibited the trial court from relying on the prior opinion's factual statement at the evidentiary hearing. (*Vance*, *supra*, 94 Cal.App.5th at pp. 712–713.) In determining prejudice, however, *Vance* noted that "[a]s a general rule, if inadmissible evidence is admitted without objection, it is substantial evidence; the failure to object forfeits its inadmissibility. [Citation.] Thus, for example, hearsay admitted without objection is substantial evidence sufficient to support a judgment." (*Id*. at p. 713.)

> "Categories of *logically relevant* evidence that nevertheless cannot be *substantial* evidence are rare.… Generally, these categories exist because, for some policy reason, we do not want the evidence to have any influence on the trier of fact's decision. [¶] At an evidentiary hearing under section 1172.6, an appellate opinion summarizing the facts, as shown in the record, is logically relevant. Our research has not revealed any legislative history explaining why the Legislature chose to make such an opinion inadmissible as evidence of the factual background of the case. Presumably, however, it was because the record itself is better evidence. An appellate opinion necessarily must leave out at least some of the facts. It may set forth only those facts that are relevant to the particular issue(s) being raised on appeal, thus omitting facts that will become relevant later under section 1172.6. And it may inadvertently misstate a fact.

> "These are good reasons to make an appellate opinion inadmissible. However, they are not good reasons to preclude the trier of fact from considering an appellate opinion under any circumstances. For example, a petitioner who feels that an appellate opinion is accurate and complete may well prefer to offer it to the trial court, in lieu of the entire record, for convenience. Presumably that is why defense counsel did not object here." (*Vance*, *supra*, 94 Cal.App.5th at pp. 713–714.)

*Vance* concluded that "when an appellate opinion is admitted at an evidentiary hearing under section 1172.6, without objection, it is substantial evidence that the trial court can consider. [The defendant] forfeited any objection to such consideration. Moreover, because the opinion was substantial evidence, which simply should have been excluded as inadmissible, harmless error analysis applies. [The defendant] cannot show

17.

that, if the opinion had been excluded, he would have enjoyed a more favorable result. (See [*Watson, supra,*] 46 Cal.2d [at p.] 836.) … [The defendant] has never claimed that our opinion misrepresented or omitted any material part of the record. Hence, the error was harmless." (*Vance, supra,* 94 Cal.App.5th at p. 714.)

## B. Analysis

In this case, the trial court's reliance on the factual statement in this court's prior appellate opinion at the evidentiary hearing violated section 1172.6, subdivision (d)(3). The error, however, was not prejudicial because it is not reasonably probable that Alvarez would have obtained a more favorable outcome if the opinion had been excluded. (*Vance, supra,* 94 Cal.App.5th at p. 714; *Lewis, supra,* 11 Cal.5th at p. 974; *Watson, supra,* 46 Cal.2d at p. 836.)

In response to Alvarez's petition, the prosecutor filed the prior opinion as an exhibit in support of its opposition; defense counsel did not file a reply or objection. The trial court issued an order to show cause and held the evidentiary hearing, where defense counsel argued the petition should be granted based on the jury instructions. The prosecutor asserted the court should deny the petition based on both the instructions and the prior appellate opinion.

The court asked the parties if they were ready to submit the matter or wanted to file additional briefs. Defense counsel replied the issue had been sufficiently briefed and the parties differed on the merits. Thereafter, the court gave a tentative ruling that relied on the factual statement from the prior opinion to deny the petition. The court asked the parties if they wanted to place anything on the record, and both parties again submitted the matter; defense counsel stated he had nothing to add.

Alvarez's counsel did not object to the prosecution's introduction of the prior opinion and the trial court's proposed reliance on that opinion's factual statement. More importantly, counsel did not argue the opinion's factual statement was incomplete or inconsistent with the trial evidence. Indeed, when the court asked if the parties wanted to

introduce any additional evidence, defense counsel said he had nothing to add and submitted the matter. As a result, the nature and circumstances of Alvarez's offenses, as introduced at trial, were undisputed at the evidentiary hearing.

*Vance* held section 1172.6, subdivision (d)(3) did not preclude forfeiture or waiver of a statutory objection. (*Vance*, *supra*, 94 Cal.App.5th at pp. 713–714.) Alvarez's belated appellate objection, raised in his letter brief, to the trial court's use of the facts in the prior appellate opinion has been forfeited if not waived. Moreover, as in *Vance*, Alvarez has not claimed that the prior opinion "misrepresented or omitted any material part of the record." (*Vance*, at p. 714.) Absent a meaningful and unfavorable variation between the evidence in the record and the prior opinion's factual summary, the court's consideration of the latter was not prejudicial.

## III. The Trial Court's Denial of the Petition

Also in his letter brief, Alvarez asserts the trial court erroneously denied his petition at the evidentiary hearing. The trial court denied the petition by finding beyond a reasonable doubt that Alvarez would be convicted as a direct aider and abettor under the amended statutes. We first review the applicable legal principles and the court's ruling, and then address Alvarez's arguments.

## A. Direct and Indirect Aiding and Abetting

"In general, to establish liability for murder under the theory of direct aiding and abetting, 'the prosecution must show that the defendant aided or encouraged the commission of the murder with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of committing, encouraging, or facilitating its commission.' " (*People v. Curiel* (2023) 15 Cal.5th 433, 466–467 (*Curiel*).)

" '[U]nder the natural and probable consequences doctrine, an accomplice is guilty not only of the offense he or she directly aided or abetted (i.e., the target offense), but also of any other offense committed by the direct perpetrator that was the "natural and probable consequence" of the crime the accomplice aided and abetted (i.e., the nontarget

19.

offense). [Citation.] A nontarget offense is the natural and probable consequence of a target offense "if, judged objectively, the [nontarget] offense was reasonably foreseeable." [Citation.] The accomplice need not actually foresee the nontarget offense. "Rather, liability ' "is measured by whether a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted." ' " ' [Citation.] Thus, under prior law, a defendant who aided and abetted an intended assault could be liable for murder, if the murder was the natural and probable consequence of the intended assault. [Citation.] The defendant need not have intended the murder or even subjectively appreciated the natural and probable consequences of the intended crime. [Citation.] Senate Bill 1437 ended this form of liability for murder." (*Curiel*, *supra*, 15 Cal.5th at p. 449.)

"Thus, after the enactment of Senate Bill 1437, a defendant cannot be convicted of murder based on the doctrine of natural and probable consequences, even with a showing of malice aforethought. [Citation.] It is an invalid theory. Murder liability requires a different, valid theory, such as direct aiding and abetting." (*Curiel*, *supra*, 15 Cal.5th at p. 462.) "[T]he requisite mens rea for direct aiding and abetting [is] 'knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends.' [Citation.] In other words, the aider and abettor must have 'knowledge of the unlawful purpose of the perpetrator' and 'the intent or purpose of committing, encouraging, or facilitating' the commission of the offense." (*Id*. at p. 468.)

## B.  The Trial Court's Ruling

As explained above, when the trial court issues an order to show cause and conducts an evidentiary hearing, it acts as an independent fact finder and may make factual findings, credibility determinations, and weigh evidence. It must find "beyond a reasonable doubt that the petitioner is guilty of murder [or attempted murder] notwithstanding the amendments to sections 188 and 189 …." (*Vargas*, *supra*, 84

Cal.App.5th at p. 951; *Harden*, *supra*, 81 Cal.App.5th at p. 51.) On appeal, we review the trial court's findings subject to the substantial evidence standard. (*Vargas*, at p. 951.)

The trial court was well aware of these standards when it denied Alvarez's petition after the evidentiary hearing. The court found beyond a reasonable doubt that Alvarez was guilty of one count of first degree premeditated murder and two counts of premeditated attempted murder "notwithstanding the amendments to … sections 188 and 189," and he was ineligible for resentencing. "Alvarez provided the killer with the gun, drove the killer around the area looking for the men who previously assaulted the killer, illuminated the victims with his vehicle's high beams when they were found, and drove up to the victims as the killer opened fire, even stopping to allow the final shot to be fired. This court finds beyond a reasonable doubt … Alvarez's actions demonstrated his own specific intent to kill." The court further found as to the attempted murder convictions, "all three victims, including the two who survived, were shot as part of the same drive-by shooting. This court finds beyond a reasonable doubt the same intent to kill … Alvarez demonstrated toward the victim of the murder also was present as to the two surviving victims. The intent was identical. The only difference is two of the three victims were lucky enough to survive being shot."

The trial court's finding that Alvarez was guilty beyond a reasonable doubt as a direct aider and abettor of first degree premeditated murder and premeditated attempted murder is supported by substantial evidence.

## C. Alvarez's Appellate Arguments

In this appeal, Alvarez's letter brief challenges the trial court's denial of his petition at the conclusion of the evidentiary hearing. He has not claimed the trial court's ruling is not supported by substantial evidence, or the factual statement from the prior appellate opinion "misrepresented or omitted any material part of the record." (*Vance*, *supra*, 94 Cal.App.5th at p. 714.)

Instead, Alvarez argues the trial court's order must be reversed because the court erroneously relied on the jury's true finding on the drive-by special circumstance to deny his petition. Alvarez asserts that based on the Supreme Court's ruling in *Lopez*, *supra*, 14 Cal.5th 562, the jury's true finding on the drive-by special circumstance was insufficient to show that he acted with malice and an intent to kill, and *Lopez*'s "new standard" was not applied to his case. Alvarez acknowledges that *Lopez* addressed the gang-murder special circumstance but asserts the same analysis would apply to the drive-by murder special circumstance.

### ***Lopez & Curiel***

In *Lopez*, the defendant did not appeal an order denying a petition filed under section 1172.6. Instead, the defendant filed a petition for habeas corpus to challenge his first degree premeditated murder conviction because the jury found him guilty after it was instructed under the natural and probable consequences doctrine, which was held invalid after he was convicted. (*Lopez*, *supra*, 14 Cal.5th at p. 567.) The appellate court held the instructional error was harmless beyond a reasonable doubt because the jury also found the gang-murder special circumstance true, which contained the jury's finding the defendant had the intent to kill when he acted. (*Ibid*.) *Lopez* reversed and held the gang-murder special circumstance was insufficient to show this was harmless error because, as conceded by the Attorney General, "the special circumstance [finding] does not itself establish the elements of first degree premeditated murder under either a direct perpetrator or an aiding and abetting theory." (*Id*. at p. 586.) *Lopez* concluded the special circumstance did not show the instructional error was harmless, and it could not be used to show the jury made the necessary findings on all of the elements required for conviction of a first degree premeditated murder. (*Id*. at pp. 568, 586–587.)

*Lopez* did not involve a section 1172.6 petition. However, these issues were further addressed in *Curiel*, *supra*, 15 Cal.5th 433, where the defendant filed a section 1172.6 petition for resentencing of his conviction for first degree murder with the

gang-murder special circumstance, and the jury had been instructed with the natural and probable consequences doctrine. The trial court denied the petition for failing to state a prima facie case based on the jury's finding on the special circumstance. *Curiel* reversed and remanded for an evidentiary hearing, and held with respect to an aider and abettor, the jury's finding of intent to kill, by itself, did not establish ineligibility for relief at the prima facie stage as a matter of law, based on the nature of the instructions given in that case. (*Curiel*, at pp. 440–441, 463.)[3]

### *Analysis*

In contrast to both *Curiel* and *Lopez*, the trial court in this case did not deny Alvarez's petition by making a prima facie finding that the jury instructions showed he was ineligible for resentencing as a matter of law. Instead, the court issued an order to show cause and conducted an evidentiary hearing since the jury had been instructed on the natural and probable consequences doctrine. The court's decision to conduct an evidentiary hearing was consistent with the concerns discussed in both *Lopez* and *Curiel*. As we have already explained, the court found beyond a reasonable doubt that Alvarez was still guilty of both murder and attempted murder under the amended versions of sections 188 and 189, and that finding is supported by substantial evidence.

Alvarez asserts the special circumstance instructions did not establish his guilt under the amended statutes. Again, as we have explained, the trial court did not rely on jury instructions by themselves to make a prima facie finding that Alvarez was ineligible as a matter of law. To the extent Alvarez argues the special circumstance instructions were incomplete or incorrect, section 1172.6 does not permit a petitioner to establish eligibility on the basis of alleged trial error. (*People v. DeHuff* (2021) 63 Cal.App.5th 428, 438.)

---

[3]     *Curiel* cautioned that its holding was limited to the jury instructions given in that specific case and "does not necessarily apply to other cases where the jury found intent to kill, or even other cases where the jury found true the gang-murder special circumstance." (*Curiel, supra*, 15 Cal.5th at p. 471.)

Even if such a claim was preserved, we determine the correctness of jury instructions based on the entirety of the instructions given to the jury. (*People v. Castillo* (1997) 16 Cal.4th 1009, 1016; *People v. Scott* (2015) 61 Cal.4th 363, 399.) At the evidentiary hearing, Alvarez's attorney argued CALJIC No. 8.25.1 only required the jury to find the perpetrator had the intent to kill, and the instructions did not clearly define the perpetrator's identity. Alvarez personally addressed the court and similarly argued CALJIC No. 8.81.21 only stated the perpetrator who fired the weapon had to act with intent to kill, and "[t]hat is not me," because he was not the gunman, and he never wanted to shoot or kill anyone.

As set forth above, CALJIC No. 8.25.1 was the introductory instruction on the special circumstance, and stated that a murder perpetuated "by means of discharging a firearm from a motor vehicle intentionally at another person outside of the vehicle when *the perpetrator* specifically intended to inflict death, is murder of the first degree." (Italics added.) CALJIC No. 8.81.21 stated the elements of the special circumstance: "One, [t]he murder was perpetrated by means of discharging a firearm from a motor vehicle; [¶] Two, [t]he perpetrator intentionally discharged a firearm at [an]other person or persons outside the vehicle; and [¶] Three, *the perpetrator*, at the time that he discharged the firearm, *intended to inflict death*." (Italics added.)

Alvarez's arguments fail to address the rest of the special circumstance instructions. The jury was also given CALJIC No. 8.80.1, that stated: "*If you find that a defendant was not the actual killer of a human being*, you cannot find the special circumstance to be true unless you are satisfied beyond a reasonable doubt that *such defendant with the intent to kill aided, abetted, counseled, commanded, induced, solicited, requested, or assisted any actor in the commission of the murder in the first degree*." (Italics added.) CALJIC No. 8.83.1 stated the jury could not find the special circumstance true unless "the proved surrounding circumstances are not only, (1), consistent with the theory that *the defendant had the required specific intent*, but

24.

(2), cannot be reconciled with any other rational conclusion." Thus, to the extent Alvarez claims the jury was not correctly instructed, that argument is refuted by the entirety of the record.

In any event, we conclude the trial court's findings at the evidentiary hearing are supported by substantial evidence, that Alvarez was guilty beyond a reasonable doubt of first degree premeditated murder and premeditated attempted murder as a direct aider and abettor under the amended statutes, and Alvarez's petition was correctly denied.

## **DISPOSITION**

The court's order of November 7, 2022, denying defendant's section 1172.6 petition for resentencing after the evidentiary hearing, is affirmed.